Jennifer D. Bennett (*pro hac vice* forthcoming)
Jennifer.Bennett@dentons.com
DENTONS US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California 94105
Tel: 415-267-4000

Daniel W. Short, WSBA #7945
dan.short@painebamblen.com
PAINE HAMBLEN LLP
717 West Sprague Avenue, #1200
Spokane, Washington 99201
Tel: 509-455-6000

*Attorneys for Plaintiff*
Her Majesty the Queen in Right of Canada as
represented by the Minister of Agriculture and
Agri-Food.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HER MAJESTY THE QUEEN IN RIGHT OF CANADA AS REPRESENTED BY THE MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority,<br><br>Plaintiff,<br><br>vs.<br><br>VAN WELL NURSERY, INC., a Washington Corporation, MONSON FRUIT COMPANY, INC., a Washington Corporation, GORDON GOODWIN, an individual, and SALLY GOODWIN, an individual.<br><br>Defendants | Case No. CaseNumber<br><br>**COMPLAINT FOR: (1) PLANT PATENT INFRINGEMENT; (2) CORRECTION OF INVENTORSHIP; (3) DECLARATION OF OWNERSHIP; (4) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT; (5) FALSE ADVERTISING UNDER THE LANHAM ACT; (6) CONVERSION; (7) TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS; AND (8) UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

1.      Plaintiff Her Majesty the Queen in Right of Canada as represented by the Minister of Agriculture and Agri-Food ("Plaintiff" or "AAFC"), brings this Complaint against Defendants Van Well Nursery, Inc., Monson Fruit Company and Gordon and Sally Goodwin (collectively "Defendants"), for injunctive relief and monetary damages as well as such other relief as specified herein, as follows:

## INTRODUCTION

2.      This case relates to the protection and enforcement of intellectual property rights in a Canadian bred sweet cherry called Staccato®.  Pursuant to a Canadian government funded tree fruit breeding program, Canadian breeder, W. David Lane bred a new sweet cherry tree.  One of the most distinguishing characteristics of the new variety was its late maturity.  This late fruit maturity extends the cherry harvest season and gives a distinct financial advantage to growers.  Agriculture and Agri-Food Canada ("AAFC") patented the new variety and called it Staccato®.  Knowing that Staccato® is an AAFC variety, knowing that it is a patented variety, and knowing that is known to consumers as Staccato®, Defendants Van Well, Monson and Goodwin have and are asexually propagating, possessing, growing, and selling trees and/or fruit they call "Glory," which is actually AAFC's Staccato®.  AAFC brings this lawsuit to stop this flagrant and willful infringement of AAFC's Staccato® patent and false, misleading, deceptive and unfair business practices.

3.      Defendant Van Well came into possession of the variety, when under the protection of a testing agreement, Plaintiff AAFC provided Defendant Van Well with Staccato® for testing and evaluation.  The agreement expressly prohibited Van Well from distributing or selling Staccato®.  Many years later, Van Well entered into an agreement with AAFC's commercialization licensee, Summerland Varieties Corporation ("SVC"), then known as PICO, to propagate, market and sell a different

AAFC bred cherry variety, Sonata.  Pursuant to Van Well's agreement with PICO, Van Well, obtained, planted, and propagated AAFC's Sonata.  Sometime after Defendant Van Well received Sonata from PICO, Defendant Goodwin purchased from Defendant Van Well, AAFC's Sonata trees.

4.     However, on information and belief, when Van Well delivered Sonata trees to Goodwin, Van Well also, without permission from AAFC, delivered AAFC's Staccato® to Goodwin.  The Sonata and Staccato® trees were both planted in Goodwin's orchard.  Defendant Goodwin later rightfully observed that one of his Sonata trees was different from the others.  It was different because the tree he observed was not Sonata but was AAFC's Staccato®.

5.     When Goodwin noticed that one of the trees was different he filed for a U.S. patent, entitled "Sweet Cherry Tree Named 'Goodwin;'" on the allegedly different tree he observed in his orchard and commercially called it "Glory."

6.     Goodwin was granted a U.S. plant patent for Glory on May 1, 2012 which he subsequently assigned to Defendant Van Well.  However, the variety described and claimed in the "Glory" patent was actually Staccato®.  Because the Glory patent claims the Staccato® variety, AAFC breeder W. David Lane is the proper inventor of the variety and AAFC the owner of the "Glory" patent.

7.     Around 2012, AAFC and SVC learned that Goodwin had an allegedly new variety he called "Glory" in his orchard, had filed for patent protection and that Defendant Van Well was the owner of the patent.  In early 2014, after a number of genetic tests were conducted, SVC demanded Van Well stop marketing and selling "Glory" since test results showed that "Glory" was actually AAFC's Staccato®.  In 2014, SVC and Defendant Van Well settled their dispute, whereby Defendant Van Well agreed not to sell Glory, to sell to SVC whatever Glory trees Van Well had in its possession, and destroy the Glory trees.  And, in 2015 Van Well further confirmed to

SVC that it had terminated its agreement with Defendant Goodwin relating to "Glory". Thus, in 2015, AAFC understood and relied upon Van Well's representations that Van Well was no longer going to grow, asexually propagate, distribute, market or sell Glory trees, that Van Well no longer possessed Glory and that all of Van Well's business activities relating to Glory had ceased.

8.    However, in approximately October of 2017, SVC learned Van Well reneged on its agreement with SVC by resuming its propagation of Glory trees for sale of the trees in 2018 and 2019.  Accordingly, in February of 2018, SVC repeatedly demanded that Van Well not propagate or sell any Glory trees.  And, on March 26, 2018, AAFC formally notified Defendant Van Well that it did not have permission from AAFC to propagate or sell Glory and demanded Van Well not to do so.

9.    In approximately October of 2017, SVC also learned that the Glory trees Van Well planted in 2017 were intended to be shipped and sold to Defendant Monson Fruit Company, a Washington State grower.  It was later confirmed by Van Well in March of 2018 that the trees were ready to be shipped to Monson.  Thus, beginning in early April of 2018, SVC contacted Defendant Monson regarding Glory and warned Defendant Monson not to take delivery of any Glory trees.  But, on May 31, 2018, after SVC followed-up with Monson regarding the Glory trees, Defendant Monson told SVC that the Glory trees had already been planted.  On information and belief, Defendant Goodwin also provided Glory budwood to Defendant Monson.  And, on information and belief, Defendant Monson has also used the budwood obtained from Goodwin to propagate hundreds of acres of Glory trees.

10.    Despite unambiguous demands from AAFC and SVC in 2018 to Van Well not to propagate and sell Glory trees and for Monson not to accept the trees, on information and belief, Defendant Van Well has sold thousands of Glory trees to Defendant Monson so that Defendant Monson could plant the trees and sell their fruit.

Despite their knowledge that propagating, making, using, offering for sale, and selling Glory, *i.e.*, the patented Staccato® trees and their fruit, are unlicensed activities that infringe the '551 Staccato Patent, Defendant Van Well and Monson refused to refrain from conducting these activities, and misled consumers.

11.    On information and belief, each Defendant has grown and continues to grow, has offered for sale and continues to offer for sale, and has sold or continues to sell Glory trees or their fruit, which is the patented Staccato®, and will continue to do so unless enjoined by this court.

## THE PARTIES

12.    Plaintiff Her Majesty the Queen in Right of Canada as represented by the Minister of Agriculture and Agri-Food ("AAFC") is a governmental authority recognized under the federal laws of Canada.  AAFC's principal place of business is located at 1341 Baseline Road, Ottawa, Ontario, Canada.  The AAFC tree fruit breeding program was established in 1924 to provide new varieties for the tree fruit industry of British Columbia, Canada, and the world.  Work at AAFC continues to develop fruit varieties with specific traits and qualities.  This breeding program at AAFC's Summerland Research and Development Centre, has produced many new tree fruit varieties over the years including, the sweet cherry variety Staccato®.  There are three broad objectives of the cherry breeding program: (1) to diversify the product to allow growers to take advantage of niche markets; (2) to improve environmental adaptation to major fruit growing areas, for consistent production of high quality fruit; and (3) to reduce the cost of production.

13.    On information and belief, Defendant Van Well Nursery Inc. ("Van Well"), is a Washington state corporation, having a principal place of business at 2821 Grant Road, East Wenatchee, Washington.  Van Well is engaged in the business of growing and selling fruit trees including, sweet cherry trees.

14.    On information and belief, Defendant Monson Fruit Company, Inc. ("Monson"), is a Washington state corporation, having a principal place of business at 252 N. Rushmore Road, Selah, Washington.  Monson Fruit Company is engaged in the business of growing, supplying and selling fruit around the world, including, sweet cherries.

15.    On information and belief, Defendant Gordon Goodwin ("Goodwin"), is a natural person residing in this judicial district, having an address at 5002 Joe Miller Road, Wenatchee, Washington.  Goodwin is a grower of sweet cherry trees and the named inventor and owner of the Glory Patent.

16.    On information and belief, Defendant Sally Goodwin is a natural person residing in this judicial district, having an address at 5002 Joe Miller Road, Wenatchee, Washington.  Sally Goodwin is an owner of the Glory Patent along with her husband Gordon Goodwin.

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367(a) and 2201.  Additionally, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as complete diversity exists between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.

18.    This Court has original jurisdiction over Plaintiff's claim for unfair competition pursuant to 28 U.S.C. § 1338(b) because those state-law claims are related to the claims under the patent laws and the Lanham Act.  Alternatively, this Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because those state-law claims form part of the same case or controversy and derive from a common nucleus of operative facts as Plaintiff's patent and Lanham Act claims.

19.    This Court also has personal jurisdiction over Defendants as they reside in

this judicial district, they have continuous and systemic contacts with this judicial district, have regularly conducted business in this judicial district, a substantial part of the acts complained herein occurred in this judicial district, and/or Defendants have committed acts of infringement in this judicial district.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Van Well, Monson and the Goodwins reside in this judicial district, have regularly conducted business in this judicial district, a substantial part of the acts complained herein occurred in this judicial district, and/or Defendants have committed acts of infringement in this judicial district.

## FACTUAL BACKGROUND

### A.     THE '551 STACCATO PATENT AND TRADEMARK

21.     United States Patent No. PP 20,551 P3 ("'551 Staccato patent"), entitled "Cherry Tree Named '13S2009'" was filed on March 6, 2003 and was issued on December 15, 2009.  The '551 Staccato patent claims priority to a provisional application filed on March 13, 2002.  A true and correct copy of the '551 Staccato patent is attached as Exhibit A.  This variety of cherry tree is commonly known as Staccato®.  The named inventor is W. David Lane.  Her Majesty the Queen in Right of Canada, as represented by AAFC, is the owner, by operation of Canadian law and assignment, of the '551 Staccato Patent.

22.     The '551 Staccato Patent describes and claims a new and distinct variety of cherry tree denominated "13S2009," and was given the commercial name "Staccato®".

23.     Staccato®'s most distinguishing characteristic is that the fruit matures, on average, significantly later than most other commercial cherry varieties.  This very late fruit maturity extends the cherry harvest season and gives a distinct financial advantage to growers.

24.     In the interest of receiving a royalty stream for the breeding program while protecting the interests of the Canadian cherry growers, AAFC has entered into a commercialization agreement with SVC.  AAFC has sought to control the distribution of Staccato® trees by filing for plant variety protection and/or plant breeders' rights in Canada, the European Union and seven other foreign countries.

25.     Plaintiff AAFC is the owner of the U.S. federally registered mark Staccato® ("the Staccato® mark").  The Staccato® trademark is protected in the United States, Canada, the European Union and three other foreign countries.

26.     AAFC owns all right, title, and interest in the Staccato® mark for goods and services relating to live commercial fruit trees and fresh deciduous fruit, including federal trademark Registration No. 3,245,440, issued May 22, 2007, in International Class 31 (a true and correct copy of certificate of registration is attached as Exhibit B.)

27.     AAFC and its licensees have used the Staccato® mark in commerce in the United States since at least as early as August 1, 2002.  The Staccato® mark has been used in interstate commerce over the last seventeen years to distinguish Staccato® sweet cherry trees and/or fruit from other cherry trees and/or fruit.

28.     The Staccato® mark is a strong, arbitrary mark that warrants broad protection against use that is not authorized by AAFC.

**B.     THE RELATIONSHIP BETWEEN VAN WELL AND PLAINTIFF AAFC AND SVC**

29.     In late August 1990, Plaintiff AAFC and Defendant Van Well entered into a Restriction Agreement for Plant Breeding Selections ("Restriction Agreement").  "Selections" was defined, among others, to include 13S-20-9, later named Staccato®.  13S-20-9, Staccato®, was provided to Van Well under the terms of this agreement.  This Restriction Agreement obligated Defendant Van Well to restrict distribution and propagation of the selections, protect AAFC's rights to the selections, and report

evaluations of the selections to AAFC.  The Restriction Agreement also prohibited selling or distributing any of the selections for any purpose.  The Restriction Agreement also provides that any mutation, is the property of AAFC.

30.    In 1994, AAFC entered into a commercialization license with Summerland Varieties Corporation ("SVC"), then known as PICO.

31.    On July 15, 1998, SVC and Van Well entered into a Variety Development Sublicense Agreement for AAFC variety Sonata.  On information and belief, in the summer of 1998, pursuant to the Variety Development agreement, SVC delivered Sonata budwood to Defendant Van Well and Van Well budded Sonata trees.  Defendant Van Well later sold Sonata trees to Defendant Goodwin.

**C.    VAN WELL, GOODWIN, MONSON AND "GLORY"**

32.    On information and belief, Van Well delivered and sold Sonata trees to Defendant Gordon Goodwin.  On information and belief, Staccato® was also delivered with the Sonata trees sold to Gordon Goodwin.  The Staccato® tree was ultimately planted in an orchard on Goodwin's property and named "Glory" by Goodwin.

33.    On December 1, 2010, Gordon Goodwin filed United States Patent No. PP22,693, entitled "Sweet Cherry Tree Named 'Goodwin'" (the "Glory '693 Patent").  The Glory '693 Patent issued on May 1, 2012.  A true and correct copy of the Glory '693 Patent is attached as Exhibit C.  The named inventor is Gordon C. Goodwin and at issuance the Glory'693 Patent was assigned to Defendant Van Well.  On information and belief, in 2015, the Glory '693 Patent was later assigned to Defendant Goodwin and Sally Goodwin.  On information and belief, Defendant Goodwin and Sally Goodwin are the current owners of the Glory '693 Patent.

34.    According to the Glory '693 Patent, like Staccato®, Glory matures a full 30 days after Bing and was initially selected for, and distinguished by, its late maturing fruit.  Additionally, a Good Fruit Grower article, found at

https://www.goodfruit.com/glory-be/, Goodwin is quoted as stating, "I thought it [Glory] was sick. Everything else is ripe and they were little green cherries." The article also states "[e]ach year the fruit on that one tree ripened weeks after the rest of the fruit had been picked."

35.    Similarly, in an article found at https://www.capitalpress.com/state/washington/hopes-are-high-for-new-glory-cherry/article_afd2c4b4-5cb1-5b2b-a300-100639cc0cae.html, it states, "Goodwin thought there was something different when a tree he purchased as a Sumleta [Sonata] from East Wenatchee's Van Well Nursery Inc. ripened about a month later than it should have."

36.    According to the Glory '693 Patent, Glory is a whole tree mutation of "Sumleta" [Sonata]. Sumleta [Sonata] is another AAFC owned cherry tree and is patented as United States Patent No. PP11,378. According to the Glory '693 Patent, Gordon planted AAFC's Sonata tree in his cherry orchard. According to the Glory '693 Patent, in 2003 he observed that one of the Sonata trees was different than the others. In particular, he noted that Glory's fruit matured a week after Sonata and a full 30 days after Bing. This tree was then asexually propagated by budding onto Mazzard rootstock. These trees were then planted in Goodwin's orchard in 2005 and fruited in 2008. Then, in 2005, 150 trees were propagated on Gisela 6 rootstock using scionwood from second generation and planted in 2007 and fruited in spring 2010. According to the Glory '693 Patent, all of the trees consistently carry the same late maturing characteristic of the parent tree.

37.    Glory bears little resemblance to Sonata and DNA results have shown they are not related.

38.    On information and belief, at some point after allegedly discovering Glory, Defendant Goodwin provided Glory budwood to Defendant Monson. On information

and belief, Defendant Monson received the Glory budwood from Defendant Goodwin, grafted the Glory budwood, has propagated hundreds of acres of Glory and has sold and continues to sell Glory fruit.

39.     On information and belief, in 2008, Defendant Goodwin entered into an agreement with Defendant Van Well to commercialize "Glory." On information and belief, in 2009, Van Well propagated the first Glory trees for commercial sale. And, on August 16, 2010, Goodwin reported he did his first commercial picking of Glory.

40.     On information and belief, on May 1, 2013, Defendant Van Well entered into an agreement with Defendant Goodwin relating to certain rights in "Glory." On information and belief, in approximately 2015, Van Well terminated its agreement with Goodwin. Just prior to terminating its agreement with Goodwin, in 2014, Van Well agreed to sell to SVC whatever Glory trees Van Well had in its possession and to destroy them. Thus, by 2015, AAFC understood at the time that Van Well was no longer going to grow, asexually propagate, distribute or sell Glory trees and had ceased all business relating to Glory.

41.     However, in the Spring of 2018, about four years later, on information and belief, Defendant Van Well sold six thousand Glory trees to Defendant Monson. On information and belief, in 2019, Defendant Van Well sold an additional nine thousand Glory trees to Defendant Monson. On information and belief, Defendant Monson planted the Glory trees and will sell their fruit.

## "GLORY" IS STACCATO®

42.     Genetic studies have shown that Glory is Staccato®.

43.     SVC obtained leaf samples of "Glory" trees and engaged Dr. Paul Wiersma to compare the DNA of "Glory" with the DNA of Staccato® and Sonata, and other cherry trees. The DNA results showed that Glory and Sonata are not related and that there was no genetic difference between Glory and Staccato®.

44.     Dr. Paul Wiersma conducted additional DNA testing using more sophisticated and sensitive single nucleotide polymorphism (SNP) analysis and reported there was less than a .0076% chance that Glory is not Staccato®.  This study showed it was highly probable Glory was not unique from Staccato®- i.e., Glory and Staccato® are the same.

45.     On information and belief, at the time AAFC was conducting its DNA studies, Defendant Van Well hired Dr. Dhingra, Professor, Washington State University and founder of the company Phytelligence, to conduct a DNA study.  Dr. Dhingra and Dr. Wiersma discussed the differences between their respective studies and Dr. Dhingra would not agree with Dr. Wiersma that Glory was Staccato®.  Despite the differences of opinions between the experts at the time, as explained above, Defendant Van Well decided to sell to SVC the Glory trees it had in its possession and destroy them.

46.     Then, in 2017, AAFC was advised of a peer reviewed study entitled "Evaluation of multiple approaches to identify genome wide polymorphisms in closely related genotypes of sweet cherry (Prunus avium L)," by Washington State University researchers, Seanna Hewitt, Benjamin Kilian, Ramyya Hari, Tyson Koepke, Richard Sharpe and Amit Dhingra (the "Hewitt paper").  Amit Dhingra is the same Dr. Dhingra who participated in the earlier discussions described in paragraph 45 with Dr. Wiersma regarding whether Glory was Staccato® on behalf of Defendant Van Well.

47.     In the 2017 Hewitt paper, a number of genetic experiments were described comparing the Staccato® and Glory genotypes.  The Hewitt paper wrongly asserts that whole genome sequencing ("WGS") shows a difference between Glory and Staccato®. The Hewitt paper WGS study is not reliable and does not show that Glory and Staccato® have distinct genotypes.  The Hewitt paper reported an alleged .161% difference between the Staccato® and Glory genotypes.  However, this difference was within the error rate expected, but error rate was not considered by the authors.

48.    AAFC has conducted an independent study and has confirmed that any alleged differences between the genotypes of Staccato® and Glory from the Hewitt paper were within the error rate and would be expected when comparing the same variety.  Specifically, any SNP differences are not due to differences between the cultivars themselves but rather due to the method of analysis.

49.    In the independent and blind study, Staccato® from Canada, Staccato® obtained from Washington State University ("WSU"), and Glory obtained from WSU could not be reliably distinguished from each other given the variant pattern alone.  The analysis showed that the WGS variant differences seen were well within the margins of WGS noise and sample preparation and/or sequencing error and indeed there was greater similarity between the Glory from WSU and the Staccato® from WSU samples than there was between the Staccato® from WSU and the Staccato® from Canada samples.  In accord, the Hewitt paper does not support that Glory is different than Staccato® and when the analysis is conducted properly, shows Glory is the same as Staccato®.  Thus, it is improper to rely on the Hewitt paper to support the allegation that Glory is different than Staccato®.

50.    Defendants are not authorized by AAFC to have the Glory trees in their possession and are not licensed to asexually propagate, possess, sell, market or distribute Glory trees and/or their fruit.

51.    Defendants Goodwin and Van Well have already admitted to possessing, planting and selling Glory trees and Defendant Monson has admitted to planting the trees and is also selling Glory fruit.  On information and belief, the defendants have grown and will continue to grow, have asexually reproduced and will continue to asexually reproduce, and are offering for sale and will continue to offer for sale, the patented Staccato® trees or fruit and improperly calling it Glory.  Defendants have refused to refrain from growing, asexually reproducing, making, using, offering for

1    sale, or selling the patented Staccato® (*i.e*., "Glory") trees or fruit.

2    **FIRST CAUSE OF ACTION: PLANT PATENT INFRINGEMENT AGAINST**

3    **DEFENDANTS**

4    52.    Plaintiff hereby incorporates by reference paragraphs 1-51, inclusive, as if

5    set forth fully herein.

6    53.    In violation of 35 U.S.C. § 271, each of the Defendants is directly

7    infringing the '551 Staccato Patent by practicing the claim of the '551 Staccato Patent

8    in the asexually propagating, making, using, offering for sale, and/or selling the Glory

9    cherry tree and/or the fruit thereof.

10    54.    On information and belief, upon knowledge of the '551 Staccato Patent,

11    each of Defendants is contributing to the infringement of, and/or inducing infringement

12    of the '551 Staccato Patent by, among other things, knowingly and with intent, actively

13    encouraging its customers, retailers and/or growers to propagate, make, use, offer for

14    sale and/or sell Glory trees and/or their fruit in a manner that constitutes infringement

15    of the '551 Staccato Patent.  There are no substantial uses of the Glory trees made,

16    used, sold or offered for sale by Defendants that do not infringe the '551 Staccato

17    patent.  Plaintiff has been and will be damaged by Defendants' infringement unless

18    enjoined by this court.

19    **SECOND CAUSE OF ACTION: CORRECTION OF INVENTORSHIP UNDER**

20    **35 U.S.C. § 256 AGAINST GOODWIN DEFENDANTS**

21    55.    Plaintiff hereby incorporates by reference paragraphs 1-54, inclusive, as if

22    set forth fully herein.

23    56.    As mentioned above, Defendant Gordon Goodwin applied for and was

24    awarded the Glory '693 Patent based on the representation that he was the sole inventor.

25    57.    W. David Lane is the sole inventor of the Glory '693 Patent.

26    58.    Defendants Gordon and Sally Goodwin are the current assignees of the

Glory '693 Patent.

59.     The inventorship of the Glory patent is incorrect because through omission, inadvertence and/or error, W. David Lane was not listed as the sole inventor on the Glory '693 Patent.

60.     AAFC is the owner by operation of Canadian law of the Glory '693 Patent.

61.     AAFC maintains a financial interest in the Glory '693 Patent.

62.     The Glory patent's description that it is a of Sumleta [Sonata] is not correct.

63.     Given that the Glory '693 Patent claims a variety of sweet cherry bred by AAFC breeder W. David Lane, AAFC requests an order correcting inventorship on the Glory '693 Patent to name W. David Lane as the sole inventor.

## THIRD CAUSE OF ACTION: DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201 AGAINST GOODWIN DEFENDANTS

64.     Plaintiff hereby incorporates by reference paragraphs 1-63, inclusive, as if set forth fully herein.

65.     W. David Lane is the sole inventor of the Glory '693 Patent.

66.     W. David Lane is not listed as the inventor of the Glory '693 Patent and AAFC is not listed as the owner or assignee.

67.     An actual, present and justiciable controversy has arisen concerning the inventorship and ownership of the '693 patent.

68.     Plaintiff seeks declaratory judgment from this Court that W. David Lane is the sole inventor of the '693 patent and AAFC is the sole legal owner of the '693 patent.

1

## FOURTH CAUSE OF ACTION: UNFAIR COMPETITION AND FALSE

2

## DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. §

3

## 1125(A)(1)(A)) AGAINST DEFENDANTS

4      69.    Plaintiff hereby incorporates by reference paragraphs 1-68, inclusive, as if

5   set forth fully herein.

6      70.    AAFC's trademark rights in its Staccato® mark are protected under

7   federal common law.

8      71.    On information and belief, Defendants have caused goods to enter into

9   interstate commerce with the false use of the name "Glory" on the trademarked

10  Staccato® trees and/or fruit.

11     72.    Defendants' false use of the name "Glory" to identify the trademarked

12  Staccato® tree and/or fruit constitutes a false designation of origin.  In doing so,

13  Defendants have falsely designated the origin of the trees and/or fruit in violation of 15

14  U.S.C. § 1125(a).

15     73.    Defendants' false designation of origin has caused or is likely to cause

16  confusion in the marketplace, including confusion among retailers, growers, customers

17  and the general public, to cause mistake and/or deception as to the affiliation,

18  connection, or association of defendants with AAFC and/or Staccato® and as to the

19  origin of defendants' goods.

20     74.    Defendants' propagation, marketing, and sale of AAFC's trademarked

21  Staccato® trees and/or fruit as Defendants' own "Glory" constitutes a scheme of

22  reverse palming off.  These acts are in violation of 15 U.S.C. § 1125(a), in that

23  Defendants have deprived Plaintiff of commercial opportunities in connection with the

24  trademarked Staccato®'s advertising value and goodwill that otherwise would arise

25  from public knowledge of the true source of the product.

26

COMPLAINT                                        - 16 -

75.     As a further direct and proximate result of Defendants' use of the name Glory to sell Staccato® trees and/or fruit, Defendants have damaged and will continue to damage AAFC's good will and reputation in its trademark rights, and is likely to cause lost sales and lost profits to AAFC.  Defendant's actions have caused and will continue to cause irreparable harm to AAFC and to the public confused or likely to be confused by Defendants' use of the name Glory to identify Staccato®, unless restrained and enjoined by this Court. AAFC has no adequate remedy at law to prevent Defendants from continuing its actions and from injuring AAFC.  AAFC seeks injunctive relief as set forth above.

76.     As a further direct and proximate result of Defendants' actions, AAFC has been damaged in an amount to be proven at trial, and for all expenses necessary to minimize and/or prevent customer confusion, and all other and further forms of relief this Court deems appropriate.

## FIFTH CAUSE OF ACTION: FALSE ADVERTISING UNDER THE LANHAM ACT (15 U.S.C. § 1125(A)(1)(B)) AGAINST DEFENDANTS

77.     Plaintiff hereby incorporates by reference paragraphs 1-76, inclusive, as if set forth fully herein.

78.     On information and belief, Defendants have caused goods to enter into interstate commerce with the misleading, deceptive and false use of the name "Glory" to identify the trademarked Staccato® trees and/or fruit.  Defendants have made literally false and misleading statements of fact with respect to its marketing, advertisement and sale of Glory trees and/or fruit because Glory is actually the trademarked Staccato®.

79.     On information and belief, such misleading, deceptive and false use of the name "Glory" has actually deceived and/or has a tendency to deceive growers, nurseries, distributors, retailers, consumers and/or the general public into believing,

among other things, that Glory is different than Staccato®.

80.  Defendants' misleading, deceptive and false statements that the fruit and/or trees are "Glory" are material.

81.  Defendants' misleading, deceptive and false use of "Glory" in its marketing and sales misrepresents the source of its product, constituting false advertising that deprives AAFC of the trademarked Staccato®'s advertising value and goodwill that otherwise would stem from public knowledge of the true source of the product.

82.  AAFC has been damaged by Defendants' false and misleading statements and, unless this conduct is enjoined, AAFC's goodwill and reputation will continue to suffer irreparable injury that cannot adequately be calculated or compensated by monetary damages.

**SIXTH CAUSE OF ACTION: CONVERSION AGAINST ALL DEFENDANTS**

83.  Plaintiff hereby incorporates by reference paragraphs 1-82, inclusive, as if set forth fully herein.

84.  AAFC is, and at all relevant times was, the rightful owner of each Staccato® tree, cutting and/or Staccato® budwood that was grafted, planted or propagated by Defendant Van Well beginning in approximately 1990 and later at Defendant Goodwin's and Monson's, including the owner of any sports, mutations of Staccato®.  Defendants are exercising dominion and control over the Staccato plants®.  AAFC also owns the intellectual property and the intellectual property rights of W. David Lane, including, the right to any patent based on his intellectual property.

85.  On information and belief, Defendant Van Well inadvertently and without consent or authorization from Plaintiff or SVC provided Staccato® to Defendant Goodwin.  On information and belief, Defendant Goodwin continues to intentionally and without consent or authorization possess, graft, propagate, plant or sell Glory trees.

Defendants Van Well and Goodwin have refused to destroy or otherwise cease and desist from possessing, and propagating Glory. Defendants actions interfere with AAFC's rights to control the plants it owns and the commercial uses made of them.

86. On information and belief, Defendant Van Well and Defendant Goodwin without consent or authorization from Plaintiff or SVC provided Staccato® to Defendant Monson. On information and belief, Defendant Monson continues to intentionally and without consent or authorization possess, graft, propagate, plant and sell Glory trees and/or their fruit. Defendants' actions interfere with AAFC's rights to control the plants it owns and the commercial uses made of them.

87. Defendants Goodwin have also wrongfully exercised dominion over the AAFC's intellectual property either by claiming rights to the Glory '693 Patent, by accepting assignment of rights under the '693 Patent, by licensing those rights, and by failing to name W. David Lane as the sole inventor of the '693 Patent.

88. Plaintiff did not consent to this conversion and has been injured through the improper and unauthorized use of its property, in an amount to be proven at trial. Moreover, on information and belief, Defendants' conduct was a substantial factor in causing Plaintiff's harm. AAFC is also entitled to the return of all rights and interest in any Glory trees and intellectual property which Defendants have wrongfully converted.

## SEVENTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS AGAINST DEFENDANTS

89. Plaintiff hereby incorporates by reference paragraphs 1-88, inclusive, as if set forth fully herein.

90. By acquiring, propagating and selling the Glory cherry tree without a license and without authorization, Defendants knowingly and intentionally interfered with prospective economic relationships between Plaintiff AAFC and SVC, thereby depriving AAFC of the economic benefits in the form of lost royalties.

91.     On information and belief, Defendants knew of the business relationships between Plaintiff AAFC and SVC, yet Defendants continued to improperly interfere with these business relationships by growing and selling Glory trees and/or their fruit without Plaintiff's authorization.

92.     Defendants' conduct was a proximate cause of damages to Plaintiff.

93.     Unless Defendants are enjoined by this Court, they will continue to interfere with the business relationships between AAFC and SVC.

## EIGHTH CAUSE OF ACTION: UNFAIR COMPETITION AGAINST DEFENDANTS

94.     Plaintiff hereby incorporates by reference paragraphs 1-93, inclusive, as if set forth fully herein.

95.     As explained in detail above, Defendants have engaged in unfair acts and competition in violation of Washington state law under RCW 19.86.020, Washington's Consumer Protection Act, by marketing and selling Glory trees and/or their fruit without license or authorization and without properly identifying them as Staccato®, in competition with Plaintiff.

96.     As explained above, Defendant Goodwin has represented and continues to represent to the public that he invented and owns the Glory variety and patent even though it is AAFC's Staccato®.  In doing so, Defendant Goodwin is passing off AAFC's intellectual property as its own in violation of Washington state law.  On information and belief, Defendant Goodwins' wrongful passing off of AAFC's intellectual property as their own has caused, and will cause, customer confusion, and has been a substantial factor in directly and proximately causing damages and irreparable harm to AAFC.

97.     Plaintiff seeks damages, including treble damages, sufficient to compensate Plaintiff for its actual losses including, lost profits resulting from

1   Defendants' unfair competition, and to recover any unjust enrichment resulting from

2   their unfair competition.

3                              **DEMAND FOR A JURY TRIAL**

4        98.    Plaintiff respectfully requests a jury trial in this action on all issues so

5   triable.

6                                 **PRAYER FOR RELIEF**

7        Based on the foregoing, Plaintiff prays for the following relief against

8   Defendants:

9        1.     Judgment in Plaintiff's favor against Defendants on all causes of action

10   alleged herein;

11       2.     A preliminary and permanent injunction to enjoin Defendants, their agents,

12   servants, employees, attorneys, successors and assigns, and all persons, firms, and

13   corporations acting in concert with them, including distributors, customers, from

14   growing, using, offering for sale, selling, reproducing, propagating, exchanging,

15   transferring, or possessing the Glory cherry trees claimed in the '551 Staccato Patent

16   and the cuttings, budwood, and fruit thereof without lawful authorization;

17       3.     An injunction against Defendants directing the removal and destruction of

18   all Glory and unauthorized Staccato® trees, cuttings, budwood and fruit;

19       4.     An order declaring AAFC owns the Glory trees, cuttings and budwood that

20   are in Defendants' possession or control;

21       5.     An order directing the Director of the USPTO to correct inventorship of

22   the Glory '693 Patent by removing Gordon Goodwin as an inventor and naming W.

23   David Lane as inventor, pursuant to 35 U.S.C. § 256;

24       6.     Order Goodwin Defendants to assign right, title and ownership of the

25   Glory '693 Patent to AAFC;

26       7.     Order Defendants to pay Plaintiff compensatory damages based on

COMPLAINT                                    - 21 -

1   evidence submitted at trial with interest at the highest rate allowable by law;

2        8.    Order Defendants to pay Plaintiff consequential, exemplary, and actual

3   damages or disgorgement of Defendants' profits unjustly obtained based on competent

4   and admissible evidence at trial with interest at the highest rate allowable by law;

5        9.    Order Defendants to pay Plaintiff enhanced damages;

6       10.    Order Defendants to pay Plaintiff's reasonable attorneys' fees and

7   allowable court costs and expenses; and

8       11.    Order all other such relief to Plaintiff under law and equity as the Court

9   deems just and proper.

10      DATED this 18th day of May, 2020.

11

12                           */s/ Daniel W. Short*

13                           Daniel W. Short, WSBA #7945
                         PAINE HAMBLEN LLP

14                           717 West Sprague Avenue, #1200
                         Spokane, Washington 99201

15                           Tel: (509) 455-6000

16                           Fax: (509) 838-0007
                         dan.short@painehamblen.com

17

18                           Jennifer D. Bennett (*pro hac vice* forthcoming)

19                           DENTONS US LLP

20                           One Market Plaza

21                           Spear Tower, 24th Floor
                         San Francisco, CA 94105

22                           Tel: (415) 267-4000
                         Fax: (415) 267-4198

23                           jennifer.bennett@dentons.com

24                           Attorneys for Plaintiff

25

26

COMPLAINT                - 22 -