FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HER MAJESTY THE QUEEN IN RIGHT OF CANADA AS REPRESENTED BY THE MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority,<br><br>    Plaintiff,<br><br>    v.<br><br>VAN WELL NURSERY, INC., a Washington Corporation; MONSON FRUIT COMPANY, INC., a Washington Corporation; GORDON GOODWIN, an individual; and SALLY GOODWIN, an individual,<br><br>    Defendants. | No. 2:20-CV-00181-SAB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY** |

The Court held a videoconference motion hearing in the above-captioned matter on January 8, 2021. During the hearing, the Court heard oral arguments in support of and against Defendants' Motion to Dismiss for Failure to Join a Necessary Party, ECF No. 40. Plaintiff was represented by Jennifer Bennett, Daniel Short, and Katherine McMorrow. Ms. Bennett presented Plaintiff's

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY ~ 1**

arguments. Defendants Van Well Nursery, Gordon Goodwin, and Sally Goodwin were represented by Quentin Batjer. Defendant Monson Fruit Company was represented by Kevin Regan and Mark Walters. Mr. Regan presented Defendants' arguments.

Defendants argue that Summerland Varieties Corporation, formerly known as PICO (hereinafter "SVC") is absent from this case and must be joined in order to satisfy Federal Rule of Civil Procedure 19 and principles of statutory standing unique to patent cases. They argue that SVC should either be joined as a party plaintiff in this case or, if joinder is impossible, the case should be dismissed. Plaintiff opposes the motion, arguing it has standing to sue on its own behalf without joinder of SVC but, if the Court does find joinder necessary, concedes that SVC will consent to being joined. The Court took the motion under advisement. Having reviewed the briefing and the relevant case law and having heard from the parties, the Court **denies** the motion.

## Facts

On a Rule 12(b)(7) motion, the Court accepts as true the allegations in Plaintiff's complaint and draws all reasonable inferences in Plaintiff's favor. *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843, 851 (9th Cir. 2019). Thus, the following facts are drawn from Plaintiff's Complaint, ECF No. 1, and are accepted as true.

1. General Factual Background

Plaintiff is the owner of United States Patent No. PP 20,551 P3, a distinct variety of cherry tree known commercially as Staccato ("the '551 patent" or "Staccato"). The patent application was filed on March 6, 2003, and was issued on December 15, 2009. Plaintiff is also the owner of the registered trademark Staccato. Staccato was developed by W. David Lane on Plaintiff's behalf. Staccato's most distinguishing characteristic is that the fruit matures significantly

later than most other commercial cherry varieties. This extends the cherry harvest season and gives growers a distinct financial advantage.

In order to receive a royalty stream for its breeding program and to protect the interests of Canadian cherry growers, Plaintiff entered into a commercialization agreement with SVC to control the distribution of, among other plants, Staccato cherry trees. The first agreement was entered into in 1994 and has been renewed and amended since then. The most recent amendment was executed in March 2019.

Plaintiff alleges that Defendants have infringed its patent on Staccato cherry trees. In July 1998, Defendant Van Well entered into a contract with SVC to propagate, market, and sell a different cherry variety bred by Plaintiff known as Sonata. Van Well planted the Sonata cherry trees and, at some later point, Defendant Goodwin purchased them from Van Well. It is believed that SVC inadvertently gave Van Well—and Van Well then gave Goodwin—Staccato cherry trees in addition to the Sonata cherry trees. Unbeknownst to the Goodwins, they planted all the trees in their orchards. Later, Mr. Goodwin noticed that one of the trees—which he thought was a Sonata cherry tree—was different from the others and assumed that the different tree was a whole tree mutation of the Sonata tree. Mr. Goodwin propagated and planted the different trees in 2005, and the trees fruited in 2008 and 2010. On December 1, 2010, Mr. Goodwin applied for a U.S. patent on the different tree, and commercially named it Glory. Goodwin was granted the patent on May 1, 2012, which he subsequently assigned to Van Well. The first commercial picking of Glory cherries occurred in August 2010.

In 2008, Mr. Goodwin provided Glory budwood to Defendant Monson. Defendant Monson grafted the budwood and has since propagated hundreds of acres of Glory cherry trees. Monson continues to sell Glory cherries.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY * 3**

In May 2013, Van Well and Goodwin entered into an agreement relating to certain rights in Glory, including commercialization rights. That agreement was terminated in 2015. Van Well reassigned the patent back to Goodwin in 2015.

Sometime in 2012, Plaintiff and SVC learned that Mr. Goodwin had an allegedly new cherry variety called Glory, had filed for patent protection, and that Defendant Van Well was, at that point, the owner of the patent. Defendants provided samples of Glory to SVC, and in early 2014 genetic tests revealed the Glory variety was identical to the Staccato variety. Van Well soon thereafter agreed to sell to SVC whatever Glory trees it had in its possession or to destroy them. As far as Plaintiff was aware, by 2015, SVC and Van Well had settled the dispute, and Van Well had agreed not to sell Glory cherries or cherry trees any longer.

However, in spring 2018, Plaintiff believes Van Well sold 6,000 Glory trees to Defendant Monson, and sold it an additional 9,000 trees in 2019. Plaintiff believes Defendant Monson planted those trees and plans to sell the fruit once the trees mature.

2. Commercialization Agreements Between SVC and Plaintiff

Fundamental to the arguments here are commercialization agreements between SVC and Plaintiff, dated from 1994 through 2019, filed at ECF Nos. 42-1, 42-2, 42-3, and 42-4. Although neither party has filed a motion for judicial notice or argued that the agreements are incorporated into the Complaint by reference, neither party objected to the Court's consideration of the documents. Furthermore, neither party questions the authenticity of the documents. Accordingly, the Court will consider these documents. *See UNILOC 2017, LLC v. Google, LLC*, --- F. Supp. 3d ---, 2020 WL 7626430, at *5, *12 n.21 (N.D. Cal. Dec. 22, 2020). The parties agree that the 2013 Agreement, as amended by the 2019 Amendment controls here. ECF No. 42-3, 42-4. Relevant portions of the Agreement are discussed at length below.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 4**

**Procedural History**

Plaintiff filed its case in federal court on May 18, 2020. ECF No. 1. It alleges eight causes of action: (1) plant patent infringement in violation of 35 U.S.C. § 271; (2) correction of inventorship under 35 U.S.C. § 256 against the Goodwin Defendants; (3) declaratory judgment under 28 U.S.C. § 2201 against the Goodwin Defendants; (4) unfair competition and false designation of origin in violation of the Lanham Act; (6) conversion; (7) tortious interference with economic relations; and (8) unfair competition in violation of Wash. Rev. Code. 19.86.020. It also requests injunctive relief enjoining Defendants from growing, using, offering for sale, selling, reproducing, propagating, exchanging, transferring, or possessing the Glory/Staccato trees and its cuttings, budwood and fruit, and requiring Defendants to remove and destroy all Glory and unauthorized Staccato trees. It also seeks an order directing the Goodwin Defendants assign right, title, and ownership of the Glory patent to Plaintiff. Finally, Plaintiff seeks compensatory, consequential, and enhanced damages, as well as attorney's fees and costs.

**Legal Standard**

1. Rule 12(b)(7) and Rule 19

Rule 12(b)(7) provides that a party may move to dismiss a complaint for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19, in turn, provides that a person must be joined in an action if, in that person's absence, the court cannot accord complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). Rule 19 also provides that a person must be joined if the person claims an interest in the subject of the action and is so situated that disposing of the action in their absence may impair their ability to protect the interest or would leave an existing party subject to multiple or inconsistent obligations because of the interest. F. R. Civ. P. 19(a)(1)(B).

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY * 5**

If the court finds that a person should be joined under Rule 19 and has not been joined, the court must order that the person be joined as a party. Fed. R. Civ. P. 19 (a)(2). If joinder is not feasible, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. Fed. R. Civ. P. 19(b); *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). The factors a court should consider in determining whether to dismiss where joinder is not possible include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in a judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

2. Statutory Standing in Patent Cases

Patent statutes give rise to a right to sue others for patent infringement, defining the nature and source of the infringement claim and determining the party that is entitled to judicial relief. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).[1] A patentee is entitled to bring an infringement action. 35 U.S.C. § 281. This includes the party to whom the patent was originally issued, successors in title to the original patentee, and the person holding legal title to the patent. 35 U.S.C. § 100(d); *Morrow*, 499 F.3d at 1339. The patent statutes—taken as a whole—grant the patent holder a "bundle" of rights associated with the patent,

---

[1] Patent infringement cases can be filed in any federal district court having personal jurisdiction over the defendant. However, patent appeals cases are heard by the Court of Appeals for the Federal Circuit regardless of which district court they originated in, and opinions from the Federal Circuit are precedential as to the question of statutory standing in patent infringement actions. 28 U.S.C. § 1295(a)(1); *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 6**

primarily the right to exclude others from making, using, selling, or offering to sell the patented invention. *See* 35 U.S.C. §§ 154, 271. This bundle of rights "may be divided and assigned, or retained in whole or part." *Vapuel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991).

To retain the ability to bring suit, the rights holder must satisfy two requirements: Article III and statutory standing under § 281. *See UNILOC 2017*, 2020 WL 7626430, at *3. Like all other cases in federal court, the plaintiff must show that it suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant, and that its injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In patent cases, constitutional injury under Article III occurs when a party performs at least one prohibited action with respect to the patented invention that violates the patent holder's exclusionary rights and infringes on the patent. *Morrow*, 499 F.3d at 1339. Exclusionary rights "involve the ability to exclude others from practicing an invention or 'to forgive activities that would normally be prohibited under the patent statutes.'" *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (quoting *Morrow*, 499 F.3d at 1342). A plaintiff in a patent suit must also have statutory or statutory standing under § 281. *Morrow*, 499 F.3d at 1344. To have statutory standing, the plaintiff must possess substantial rights to the patent in suit. *Id.*

Generally speaking, there are three types of plaintiffs in patent infringement suits. First, there are those who can sue in their own names alone; they hold all rights or all substantial rights to the patent. *Id.* No other parties need be joined in this type of action in order to satisfy Rule 19 and statutory standing. Second, there are those that can sue so long as both the patent owner and a licensee is joined in the suit; this covers persons who hold some rights, but not all substantial rights, to the patent, such as an exclusive licensee. *Id.* In this context, both the patent owner and the licensee must be joined, and the patent rights are enforced through or in the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO JOIN A NECESSARY PARTY * 7

name of the owner. *Id.* at 1340. Third, there are those who cannot participate as a party to an infringement suit at all; these parties hold less than all substantial rights to the patent and lack the exclusionary rights necessary to satisfy the injury in fact requirement for standing, and this deficiency cannot be cured by adding the patent owner to the suit. *Id.* at 1341.

      To determine which category a particular plaintiff falls into, and whether that party has statutory standing to bring suit on their own or whether another party must be joined in the action, the court must determine whether that plaintiff possesses all, some, or no substantial rights in the patent. *Lone Star*, 925 F.3d at 1229. If the party asserting infringement is not the patent's original patentee, the court must look to whether the agreement transferring patent rights to the party is an assignment of all rights or a mere license. *Id.* at 1229 (citing *AsymmetRX, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318-19 (Fed. Cir. 2009)). An agreement that transfers all substantial rights to a patent is tantamount to an assignment of that patent to the exclusive licensee. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1358-59 (Fed. Cir. 2010).

      To determine whether an exclusive license is tantamount to an assignment of all rights in a patent, the court must ascertain the intents of the parties to the agreement and examine the substance of what was granted. *Id.* at 1359. This is based on the totality of the agreement, rather than the formalities, labels, or "magic words." *Lone Star*, 925 F.3d at 1229 (citing *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891)). A licensee has all substantial rights if it becomes an "effective patentee" and has the interests and exclusionary rights of a patentee. *Morrow*, 499 F.3d at 1340, n.6. Although there is no exhaustive list of rights that can transform an exclusive licensee into the holder of all substantial rights to a patent, courts have identified two particularly salient rights: (1) enforcement, and (2) alienation. *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059-60 (Fed. Cir. 2020); *Alfred E. Mann*, 604 F.3d at 1361 (noting that a licensor's retained right to sue accused

ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO JOIN A NECESSARY PARTY ~ 8

infringers "often precludes a finding that all substantial rights were transferred to the licensee"). Other factors a court can consider include the scope of the licensee's right to sublicense, the nature of license provisions regarding reversion of rights, the duration of the license grant, and the nature of any limits on the licensee's right to assign its interest in the patent. *Immunex Corp.*, 964 F.3d at 1089-60.

## Discussion

Defendants argue that SVC must be joined as a party to this case. They argue that the commercialization agreements entered into by Plaintiff and SVC gave SVC several key "sticks" of Plaintiff's bundle of rights to the '551 Staccato patent. They argue that this shows that Plaintiff lacks all substantial rights to the patent and therefore lacks statutory standing to sue on its own. If joinder is not possible, Defendants request that the Court dismiss the case because non-joinder of SVC would cause prejudice, risk inconsistent liabilities and multiple litigation, and could put their customers at risk of further infringement suits. In response, Plaintiff argues that it has all substantial rights in the '551 Staccato plant to give it statutory standing such that SVC is not a necessary party. Plaintiff also argues that, if the Court finds joinder is necessary, SVC has consented to be joined and dismissal is not warranted.

There is no dispute that Plaintiff, as the owner of the patent, has constitutional standing. *See Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1368 (Fed. Cir. 2003). Instead, what must be determined is whether Plaintiff has statutory standing. As the parties admit, the case at bar is the "converse" situation of most patent infringement cases—Defendants are seeking joinder of a licensee, not the patent owner.

//
//
//

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 9**

1. <u>Whether Plaintiff Conveyed Substantial Rights in the '551 Staccato Patent to SVC</u>

In order to determine whether SVC is a necessary party, the Court must first determine whether Plaintiff conveyed substantial rights to it sufficient to destroy its own statutory standing. Defendants argue that the 2013 Agreement, as amended in 2019, conveyed enough rights to SVC that Plaintiff now lacks all substantial rights to the '551 Staccato patent and therefore lacks statutory standing unless SVC is joined as a party.

    a. *Enforcement Rights*

As discussed above, a party's right to enforcement is a pivotal right in determining whether substantial rights have been retained by a patent owner or given away to a licensee. Defendants argue that Plaintiff gave SVC "unfettered" and "important" enforcement rights, and therefore no longer has substantial rights itself.

The Court considers the terms of the 2013 Agreement, as amended by the 2019 Amendment, itself. Section 10.3 of the 2013 Agreement provides that SVC:

> shall have the right to enforce the [patent rights] against any infringement or alleged infringement thereof, and shall at all times keep AAFC informed as to the status thereof. Subject to AAFC's prior written approval (which will not be unreasonably withheld), [SVC] may, at its own expense, institute suit against any such infringer or alleged infringer and prosecute such suit in a manner consistent with the terms and provisions hereof. AAFC shall reasonably cooperate in any such litigation and [SVC]'s expense, and [SVC] shall keep AAFC appraised in a timely manner of all litigation activities. In any litigation under this paragraph 10.3, [SVC] shall not have the right to settle or otherwise compromise AAFC's position as a licensor or owner of the [patent rights] without AAFC's prior written consent.

ECF No. 41 at 112, ¶ 10.3. The 2013 Agreement also covers when Plaintiff may sue for patent infringement:

> If [SVC] elects not to enforce the [patent] rights, then [SVC] shall so notify AAFC in writing within six (6) months of receiving notice that an

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 10**

> infringement exists, and AAFC may, in its sole judgment and at its own expense, take steps to enforce its [patent] and related rights, settle, and defend such suit in a manner as AAFC deems fit, even if such settlement might compromise viability of this License, and recover for its own account any damages, awards, or settlements resulting therefrom.

ECF No. 41 at 113, ¶ 10.5.

Defendants argue that, because Plaintiff lacks unconditional and unilateral enforcement rights in the '551 Staccato patent, it lacks all substantial rights and that SVC must be joined. The Court is not convinced. By its terms, the Agreement placed strict limitations on SVC's enforcement rights and retained significant enforcement rights for itself. Despite Defendants' assertions to the contrary, Plaintiff maintained significant control over the course of patent enforcement litigation and had unfettered rights to bring enforcement actions if SVC declined to bring suit. And unlike SVC, Plaintiff has the right to make any litigation decisions it wanted without first consulting SVC, even if that decision undermined the validity of the Agreement. Although Defendants are correct that there do not appear to be limits on SVC's right to pursue non-judicial enforcement actions—such as the sending of cease-and-desist letters—those rights do not outweigh the significant rights retained by Plaintiff compared to the limited rights given to SVC. Furthermore, the Agreement here gave less rights to SVC and retained more rights for Plaintiff than cases where the Federal Circuit has previously found a licensee lacked substantial rights to a patent to give it statutory standing to sue for infringement. *See Alfred E. Mann*, 604 F.3d at 1362-63. This suggests Plaintiff maintained substantial rights in the '551 Staccato patent and, in turn, that SVC does not have substantial rights.

b. *Sub-Licensing Rights*

The Court next considers SVC's sub-licensing rights. Defendants argue that SVC had broad sub-licensing rights to the '551 Staccato patent, and this deprives

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 11**

Plaintiff of all substantial rights to the patent. The 2013 Agreement provides in relevant part:

> [SVC] is permitted to sub-license non-affiliated or non-controlled parties on the same terms and conditions of this License. The terms and conditions of any sub-license also apply to sub-sub-licensees granted by [SVC] and shall include but are not limited to the following:
> - be royalty-bearing and revocable;
> - [SVC] shall negotiate a consideration with the sub-licensee that will result in Gross Revenues to [SVC];
> - be only within a Territory or any portion thereof;
> - be only within the Field of Use or a subset thereof;
> - be subject to the same obligations and restrictions as those required of [SVC] under this License;
> - be in a contractual form determined by [SVC] who will inform AAFC beforehand. AAFC reserves a right of refusal on any sub-licensing or sub-sub-licensing agreement or any other agreement [SVC] could engage involving AAFC's intellectual property. Such refusal from AAFC would be an exceptional measure based on reasonable ground and proper justification;
> - be copied to AAFC immediately following execution; and
> - not be a *de facto* assignment.
>
> Irrespective of the nature of the commercial or corporate devices used by [SVC] to Commercialize, (whether via sub and sub-sub-licensees or otherwise), all Commercialization by such entities are deemed to be Commercialization by [SVC]. Furthermore, [SVC] shall ensure that any monies owing to AAFC from the sub-licensee or sub-sub-licensee (or other commercial or corporate devise used by [SVC]) is paid to AAFC when due.

ECF No. 42 at 100, ¶¶ 2.9-2.9.8.

Whether a licensee has the right to sub-license is a key factor in assessing whether a plaintiff has all substantial rights to a patent in suit. *Alfred E. Mann*, 604 F.3d at 1360-61 (citing *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1378-80 (Fed. Cir. 2000)). For example, the Federal Circuit has concluded that a licensee that had a completely unfettered right to grant sub-licenses—and could effectively negate enforcement actions by the patent owner by giving an infringer a

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 12**

retroactive, royalty-free sub-license—had substantial rights in the patent in issue. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000). The Federal Circuit has also recognized the opposite scenario—it held that a licensee lacked all substantial rights because the patent owner could negate enforcement actions brought by a licensee by granting retroactive sub-licenses to an alleged infringer. *Lone Star*, 925 F.3d at 1231-32.

The Court concludes that SVC does not have enough sub-licensing rights to find that Plaintiff lacks substantial rights in the '551 Staccato patent. As detailed above, the 2013 Agreement imposed detailed limitations on SVC's right to sub-license and expressly retained for Plaintiff the right to withhold permission for any sub-license. Accordingly, SVC's sub-licensing rights did not give it all substantial rights in the '551 Staccato patent, nor does its rights deprive Plaintiff of all substantial rights.

c. *Intellectual Property Maintenance Responsibilities*

Defendant also argues that Plaintiff gave SVC broad responsibility to obtain legal protection for its plants, therefore "divest[ing] itself of important rights and responsibilities to obtain and maintain intellectual property." ECF No. 40 at 18. The 2019 Amendment to the 2013 Agreement provides:

> SVC, concurrent with exercising their right to Commercialize a Line, must apply for intellectual property rights on behalf of AAFC, such as [plant variety rights], as well as any regulatory registration and legislation, necessary to enable the sale and protection of the Line as a Variety in the chosen country or countries of the Territory. All applications and registrations shall be in the same of Her Majesty the Queen in Right of Canada, as represented by the Minister of Agriculture and Agri-Food, with all costs being the responsibility of SVC. . . . Should it provide impossible to obtain [plant variety rights] for a variety, SVC may decide to obtain a Trademark to be used in association with a Variety. SVC may also choose to obtain a Trademark in addition to [plant variety rights] to be used in association with a Line or Variety in the name of Her Majesty the Queen in Right of Canada, as represented by the Minister of Agriculture and Agri-Food. The denomination used for a Trademark cannot be the same

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 13**

> denomination used for [plant variety rights] within the same Territory. The cost of applying for and maintaining a Trademark is the responsibility of SVC.

ECF No. 42 at 141, ¶ 2.5. Defendants argue this provision shows that Plaintiff gave away an essential "stick" of its bundle of patent rights because it limited its ownership rights in the patents.

Although Defendant is correct that "[t]he responsibility to maintain a patent is one of the obligations that has been recognized by [the Federal Circuit] as an indication that the party with that obligation has…an ownership in the patent," *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007), the Agreement here shows that this is not the case here. Here, SVC was responsible for applying for, paying for, and maintaining intellectual property rights for lines it chose to commercialize. However, SVC was required to make such application in Plaintiff's name and on Plaintiff's behalf, not on its own. The Federal Circuit has recognized that the fact that a licensee has paid maintenance fees for patents does not necessarily mean the licensor has lost all substantial ownership rights by virtue of contracting for the licensee to handle the administrative and logistical duties of obtaining intellectual property protection. *See Lone Star*, 925 F.3d at 1232, n.4. Plaintiff retains ownership rights in its intellectual property, and therefore has substantial rights in the '551 Staccato patent.

d. *Intellectual Property Rights*

The Court next considers Plaintiff's intellectual property rights. Plaintiff argues that it retained significant and substantial rights in its intellectual property and argues that SVC has only limited rights to test and commercialize certain lines and varieties. It also argues it retained the right to review and approve SVC's testing and commercialization plans "in its sole discretion." It also argues that SVC's rights came with territorial and field of use imitations, *see* ECF No. 42 at 99, ¶ 2.7.2, and were royalty bearing. Defendants argue that Plaintiff wrongfully

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 14**

focuses on the rights it *retained* in the Agreement rather than those it *gave away* to SVC.

Plaintiff has retained substantial rights in its intellectual property. Indeed, the Agreement provides that "each Line or Variety…are the sole property of [Plaintiff]," ECF No. 42 at 107, ¶ 7.1.1, and that Plaintiff may act as it wishes with regards to its property. It would be nonsensical to read this language and conclude that Plaintiff gave away all substantial rights in the '551 Staccato patent.

  e. *Termination Rights*

The Court finally considers the termination rights provided in the 2013 Agreement. *Propat*, 473 F.3d at 1191-92 (noting that a licensor's power to terminate an agreement is an indication that the licensor retains a significant ownership interest in the patent).

On its face, the 2013 Agreement provides that the license expires after six years, with the option to renew the license at the end of that term. ECF No. 42 at 101, ¶ 3.1. However, the license will not be renewed if SVC breaches the agreement, is involved in a dispute with Plaintiff, either party wants to amend the agreement, or either party provides the other with 90-days' notice of its intent to withdraw from the license. ECF No. 42 at 101, ¶ 3.3.2.

The Agreement also provides when Plaintiff can terminate the license with SVC. The 2013 Agreement provides that Plaintiff has the unilateral right to terminate the agreement without compensation to SVC if it: (1) fails to use commercially reasonable efforts to test and sell the plants; (2) fails to make any payment provided for in the agreement and does not make any payment within 90 days of the due date; (3) refuses, neglects, or fails to meet quality standards or allow access for audit purposes; (4) ceases to carry on business; (5) breaches three or more provisions of the agreement within any consecutive 12-month period; (6) commits an unresolved breach of a material provision of another agreement with Plaintiff and that breach occurred during the term of the license; (7) is convicted of

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY * 15**

a criminal or regulatory offense which directly or indirectly affects the ability of SVC to conduct itself under the license or to test or sell lines or varieties; (8) commits or permits a breach and does not remedy within 60 days after being required in writing to do so by Plaintiff; and (9) expressly or implicitly repudiates the agreement by refusing to comply with it. ECF No. 42 at 114, ¶ 11.1. The license automatically terminates and reverts all rights to Plaintiff if (1) SVC assigns the license without prior written consent; or (2) SVC becomes bankrupt, insolvent, or otherwise has its corporate form implicated. ECF No. 42 at 114-15, ¶ 11.2. The Agreement does not give SVC similar rights to unilaterally terminate its agreement with Plaintiff.

Thus, because Plaintiff has significant power to terminate its Agreement with SVC, while SVC has no reciprocal power to do so, this weighs in favor of finding that Plaintiff as retained substantial rights to the '551 Staccato patent.

      f. *Conclusion*

The Court therefore concludes that, based on the totality of the agreements between SVC and Plaintiff, that Plaintiff has all substantial rights to the '551 Staccato patent. It did not give away so many rights in the patent to SVC to render SVC a de facto owner of the '551 Staccato patent such that Plaintiff lacks statutory standing to enforce its rights on its own behalf.

  2. <u>Whether SVC is a Necessary Party Who Must be Joined under Rule 19</u>

Defendants argue that complete relief cannot be achieved without joinder of SVC. They argue SVC is a necessary party because Defendants will not be able to obtain complete relief and because all of its defenses rely on SVC's interactions with them and Plaintiff. They argue that they will be materially prejudiced because of the risk of potential actions against them and their customers should SVC decide to bring infringement actions on its own behalf in the future. In response, Plaintiff argues that SVC is not a necessary party and need not be joined. It argues that there is no chance of prejudice because SVC had only a limited contractual right to sue

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY** * 16

Defendants for infringement, and it relinquished that right when it did not sue upon notice of the alleged infringement. Furthermore, Plaintiff argues SVC is barred by patent law from suing Defendants' customers for "downstream" infringement.

As discussed above, Plaintiff has all substantial rights to the '551 Staccato patent such that—as a matter of statutory standing—SVC need not be joined. Furthermore, Defendants have failed to show that they will be prejudiced or at risk of inconsistent obligations if SVC is not joined. SVC has now promised it will not sue—although under the Agreement it had already waived its right to do so by not exercising that right before Plaintiff brought suit—and has agreed to be bound by any judgment in this case. ECF No. 45; *see, e.g.*, *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 211, 215 (D. Del. 2006) (finding that the plaintiff was the only party with the ability to enforce a patent or recover for infringement where the parties with residual enforcement rights renounced their claims and declared themselves bound by the judgment in the litigation). Therefore, SVC is not a necessary party who must be joined under Rule 19.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss for Failure to Join a Necessary Party, ECF No. 40, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 13th day of January 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY \* 17**