FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 03, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HER MAJESTY THE QUEEN IN RIGHT OF CANADA AS REPRESENTED BY THE MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority, | No. 2:20-CV-00181-SAB |
| Plaintiff/Counter-Defendant, | **ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| VAN WELL NURSERY, INC., a Washington Corporation; MONSON FRUIT COMPANY, INC., a Washington Corporation; GORDON GOODWIN, an individual; and SALLY GOODWIN, an individual, | |
| Defendants/Counter-Plaintiffs, | |
| v. | |
| SUMMERLAND VARIETIES CORPORATION, | |
| Third Party Defendant/ Counter-Defendant. | |

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . .** *1

Before the Court are Defendants' Motion for Partial Summary Judgment on Invalidity, ECF No. 78, and Plaintiff and Third-Party Defendant's Motion to Dismiss Counterclaim Number 3, ECF No. 90. The Court held oral argument on November 9, 2021. ECF No. 157. Plaintiff Her Majesty the Queen in Right of Canada as represented by the Minister of Agriculture and Agri-Food ("AAFC") is represented by Gaspare Bono, Jennifer Bennett, Leanna Anderson, Leslie Barry, and Daniel Short; Third-Party Defendant Summerland Varieties Corporation ("SVC") is also represented by Daniel Short and Jennifer Bennett.[1] Defendant Van Well Nursery, Inc. ("Van Well") is represented by Kent Doll, Quentin Batjer, and Timothy Billick; Defendants Gordon Goodwin and Sally Goodwin (the "Goodwins") are also represented by Quentin Batjer and Timothy Billick. Defendant Monson Fruit Company, Inc. ("Monson Fruit") is represented by Mark Walters, Mitchell West, and Kevin Regan.

The Court has reviewed the parties' briefing and applicable caselaw, heard oral argument from counsel, and is fully informed. The Court holds that genuine disputes of material fact preclude judgment as a matter of law on patent invalidity, and therefore, Defendants' Motion for Partial Summary Judgment is denied. Construing facts in the light most favorable to AAFC and SVC, a reasonable jury could find that the testing agreements did not amount to a commercial sale or offer.

With respect to Plaintiff and Third-Party Defendant's Motion to Dismiss Counterclaim Number 3, the court holds that Monson Fruit, Van Well, and the Goodwins have stated a plausible claim under Section 2 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 2, and theory of *Walker Process* fraud. Because the counterclaim meets the pleading standard of *Twombly*, the motion is denied.

---

[1] Because a notice of appearance was not filed on behalf of SVC, the Court assumes that the attorneys signing pleadings for SVC are its only representatives. *See, e.g.*, ECF No. 90 at 1; ECF No. 101 at 1, 31.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . ~ 2**

**Procedural History**

Plaintiff AAFC filed this action on May 18, 2020. ECF No. 1. It alleges eight causes of action: (1) plant patent infringement in violation of 35 U.S.C. § 271; (2) correction of inventorship under 35 U.S.C. § 256 against the Goodwins; (3) declaratory judgment under 28 U.S.C. § 2201 against the Goodwins; (4) unfair competition and false designation of origin in violation of the Lanham Act; (5) false advertising under the Lanham Act; (6) conversion; (7) tortious interference with economic relations; and (8) unfair competition in violation of Wash. Rev. Code § 19.86.020. Monson Fruit, Van Well, and the Goodwins deny all claims against them; they also present counterclaims against AAFC and SVC. Monson Fruit, Van Well, and the Goodwins seek declaratory judgment of patent invalidity and unenforceability; as is relevant here, they also assert a third cause of action for unlawful restraint of trade under the theory of *Walker Process Equipment, Inc. v. Food Machinery Chemical Corp.*, 382 U.S. 172 (1965). AAFC and SVC deny each claim.

The Court issued a Jury Trial Scheduling Order in this matter on August 6, 2020. ECF No. 29. Shortly after, the Court granted the parties' Stipulated Motion for Protective Order. ECF Nos. 32, 33. Monson Fruit filed a Stipulated Motion to Seal on October 29, 2020, ECF No. 34, which the Court granted on October 30, 2020. ECF No. 36. Monson Fruit, Van Well, and the Goodwins filed a Motion to Dismiss on November 5, 2020. ECF No. 40. The Court denied the Motion to Dismiss on January 13, 2021. ECF No. 51.

On March 18, 2021, Monson Fruit filed a Motion for Leave to File an Amended Answer to assert counterclaims against AAFC and SVC. ECF No. 55. The Court granted the Motion for Leave on April 23, 2021. ECF No. 62. Monson Fruit, Van Well, and the Goodwins filed the present Motion for Partial Summary Judgment on Invalidity on July 22, 2021, ECF No. 78, and AAFC and SVC filed the Motion to Dismiss Counterclaim Number 3 on July 27, 2021. ECF No. 90.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *3**

On September 28, 2021, the Court issued an Amended Jury Trial Scheduling Order. ECF No. 141. Monson Fruit filed a Motion to Compel on September 23, 2021, ECF No. 138, Motion for Order for International Judicial Assistance on October 11, 2021, ECF No. 146, and associated Motion to Expedite Hearing the same day. ECF No. 148.

On December 6, 2021, the Court granted, in part, Monson Fruit's Motion to Compel. ECF No. 158. The Court also granted Monson Fruit's Motion for Order for Judicial Assistance on December 8, 2021. The jury trial in this action is set for October 17, 2022.

## Background

### A. Development of Staccato

The following facts are undisputed and derive from Monson Fruit, Van Well, and the Goodwins' Statement of Material Facts Not in Dispute, ECF No. 79; AAFC and SVC's Response to Defendants' Rule 56 Statement of Material Facts, ECF No. 102; and Monson Fruit, Van Well, and the Goodwins' Statement of Responsive Facts re: Motion for Partial Summary Judgment on Invalidity, ECF No. 128.

Staccato is a Canadian-bred and late-maturing sweet cherry tree. The Staccato variety was first crossed at the Pacific Agri-Food Research Center in 1982 and discovered by the inventor, Dr. David Lane, the same year. Staccato was planted out as a seedling in 1984, and beginning around 1990, the fruit was evaluated from this seedling. In August 1990, four Staccato trees were created by T-budding[2] vegetative buds of Staccato onto Mazzard rootstock in Canada. The resulting trees were grown in a nursery, dug up in the fall of 1991, and stored over winter. In 1991, Staccato was given the Breeders Reference Number 13S-20-09. Then, in spring of 1992, the trees were removed from storage and planted in a

---

[2] T-budding refers to the practice of grafting a scion bud to rootstock to propagate a new plant.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *4**

field. The specific trees were stable in their horticultural traits and no off-types or variants occurred in the environment tested. For each season after 1992, Staccato was asexually reproduced in Canada and its distinguishing traits were conserved over each successive generation.

Third-Party Defendant SVC, also known as Okanagan Plant Improvement Corporation, is responsible for managing and licensing AAFC's intellectual property for certain fruit varieties. SVC entered into "testing agreements" or "growing contracts" whereby it supplied growers with designated varieties of scions, including Staccato, to plant on specific rootstocks. The agreements permitted growers to "access, test and evaluate the plant material" of Staccato, provided that SVC remained the "holder of exclusive evaluation, distribution, propagation, and commercialization rights for the Agriculture and Agri-Food Canada, Summerland[.]" ECF No. 82 at 6–8. Among other things, many agreements on record provided that the Staccato plant material "remain[ed] the property of the party of origin (Agriculture and Agri-Food Canada, Summerland Research Centre)," and that the grower would not "give, sell, transfer or otherwise dispose of the plant material to any other person" or "propagate or reproduce the plant material." *See, e.g.*, ECF No. 111-1 at 2–3.

On March 13, 2000, SVC filed an application for plant variety protection for Staccato in Canada. On March 6, 2002, AAFC filed Application Serial Number 10/379,714 in the United States, claiming a U.S. patent for Staccato. ECF No. 1-1. SVC, working with the inventor Dr. Lane, also filed U.S. Application Serial No. 60/363,574 on March 13, 2002. A patent (U.S. Patent Number 20,551 P3, or the "'551 Patent") was issued for Staccato in the United States on December 15, 2009. The '551 Patent claims priority to the provisional application filed on March 13, 2002.

//
//

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *5**

### B. Counterclaim Number 3: Unlawful Restraint of Trade

The following facts relate only to Monson Fruit, Van Well, and the Goodwins' allegations as pleaded in support of their antitrust counterclaims against AAFC and SVC.

Monson Fruit, Van Well, and the Goodwins allege that AAFC and SVC withheld critical information from the United States Patent Office ("U.S. PTO") regarding prior distribution of Staccato during prosecution of its patent. ECF No. 63 at 59, ¶ 38. Monson Fruit, Van Well, and the Goodwins declare that the growing contracts described above amount to "public use" and commercialization of Staccato; and if the U.S. PTO had been aware of the contracts, the U.S. PTO would have denied the patent application due to the on-sale bar.[3]

In their Amended Answers, Monson Fruit, Van Well, and the Goodwins name individuals who they allege intentionally and knowingly withheld information that was material to the U.S. PTO's decision. *Id.* at ¶ 37. They assert that the U.S. PTO Examiner requested information from Dr. Lane and SVC on if, and when, the claimed plant variety "was publicly available prior to the filing date of the instant application," including "catalogs" depicting the invention. *Id.* at 58, ¶¶ 35–36. In response to the U.S. PTO correspondence, Monson Fruit, Van Well, and the Goodwins assert that Wendy Couriard and Ken Haddrell, as well as Dr. Lane, withheld material information from the Examiner, including a C&O Nursey 1999 fall catalog depicting Staccato and the growing agreements that were executed. *Id.* at 59–60, ¶ 38. Monson Fruit, Van Well, and the Goodwins assert this

---

[3] Under the version of the Patent Act that governs this case (*i.e.*, in effect prior to the passage of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, effective September 16, 2012), "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). This is known as the "on-sale bar."

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *6**

information was material to granting the patent application, *id.* at 60–61, ¶ 39, and "[b]ut for the inventor's failure to disclose this information, and but for the failure by SVC to disclose this information, the '551 Patent would have never been granted." *Id.* at 61, ¶ 40.

Monson Fruit, Van Well, and the Goodwins claim that Ms. Couriard acknowledged in discussions with Stemilt Growers, Inc. ("Stemilt") that any commercialization would require a grower to abide by the planned exclusive license arrangement. *Id.* at 64, ¶ 51. In a request sent by SVC regarding exclusive licensing in March 2002, Mr. Haddrell acknowledged that there was one "tester" who was "not in good standing" and, allegedly, subsequent emails acknowledged the possibility of other unauthorized pre-critical date U.S. testers. *See id.* Because Ms. Couriard and Mr. Haddrell were aware of a duty of candor owed to the U.S. PTO and helped prepare the inventor's response to the Examiner's request, they allegedly "withheld material information from the Examiner of the Staccato patent application with an intent to deceive the Patent Office." *Id.* at 65, ¶¶ 52–53.

Under Monson Fruit, Van Well, and the Goodwins' theory, SVC had already signed an exclusive U.S. marketing agreement for Staccato with Stemilt by the time they applied for a U.S. patent, and they understood that any failure to obtain a patent on Staccato might jeopardize the continued success of that agreement. *Id.* at 67, ¶¶ 57–58. Further, Monson Fruit, Van Well, and the Goodwins claim that an unnamed general manager and board member in 2008 abandoned prosecution of the '551 application because he or she realized any patent would be "invalid and unenforceable." *Id.* at 68, ¶ 59. Monson Fruit, Van Well, and the Goodwins also contend that Mr. Culley and a patent attorney, Penny Aguirre, misrepresented to the U.S. PTO that the decision to previously abandon the application was "unintentional." *Id.* at ¶ 60. Consequently, they assert that "AAFC, namely Mr. Culley and attorney Ms. Aguirre, withheld material information from the Examiner

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *7**

of the Staccato patent application with an intent to deceive the Patent Office." *Id.* at ¶ 61.

## Legal Standard

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

### B. Motion to Dismiss

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Counterclaims must therefore contain more than "labels and conclusions" and a counter-plaintiff's "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Twombly*, 550 U.S. at 555. A dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations" contained in the counterclaim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[t]o the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## Discussion

### A. Motion for Partial Summary Judgment on Invalidity

Monson Fruit, Van Well, and the Goodwins argue that AAFC's patent is invalid pursuant to the on-sale bar provision, 35 U.S.C. § 102(b), because AAFC sold or offered Staccato as goods over one year before the patent application date. They contend that business records depict an exchange of money in return for Staccato material and that the testing agreements amounted to semi-commercial, if not commercial, sales. Monson Fruit, Van Well, and the Goodwins also assert that Staccato was ready for patenting prior to the critical date and had been reduced to

practice. Finally, they assert that despite any factual discrepancies, the Court can resolve patent validity as a matter of law based on the evidence presented. ECF No. 128 at 10, ¶¶ 56–57.

In contrast, AAFC and SVC contend that Staccato was not subject to commercial sale or offer before the critical date, and the testing agreements amounted to transactions for nursery services, not for sale of Staccato itself. AAFC and SVC argue that every person or entity in possession of Staccato prior to the critical date did so pursuant to a valid testing agreement or provided nursery services for someone under a test agreement. They claim that the testing was permissible experimental use, and therefore, the on-sale bar does not apply. AAFC and SVC nonetheless argue that several disputed facts preclude summary judgment on the issue.

Invalidity of a patent is a matter of law based on underlying facts. *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1365 (Fed. Cir. 2016). On summary judgment, Monson Fruit, Van Well, and the Goodwins must demonstrate, by clear and convincing evidence, that there was a definite sale or offer to sell Staccato more than one year before the patent application. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045 (Fed. Cir. 2001). All justifiable factual inferences should be drawn in AAFC and SVC's favor. *Anderson*, 477 U.S. at 255.

In this case, the Court finds that genuine disputes of material fact preclude summary judgment on the issue of patent invalidity. At least two material facts are disputed by the parties. First, Monson Fruit, Van Well, and the Goodwins allege that several Staccato growers lacked testing agreements. They assert that Twin M Farms, D&J Orchards, Gaspar Orozco, Rick Kelley, Oregon State University, Mike Scott, Blue Lake Orchards, and Golddigger Apples, Inc. grew Staccato without testing agreements. ECF No. 79 at 5–6. Second, Monson Fruit, Van Well, and the Goodwins contend that the testing occurred on behalf of parties other than Staccato's inventor, AAFC, and/or SVC. *See* ECF No. 78 at 2.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *10**

On the other hand, AAFC and SVC first assert that all Staccato farmers grew pursuant to testing agreements. AAFC contracted with three tree nurseries—Willow Drive, Columbia Basin, and Fowler Nurseries—to bud Staccato wood onto rootstock, and allegedly, the trusted nurseries provided "test trees only to growers under test agreements." ECF No. 102 at 25, ¶¶ 55–59. Columbia Basin Nursery, for example, executed test agreements with other growers to bud Staccato wood on rootstocks. ECF No. 80 at 19 (Ex. E), 23 (Ex. G), 31 (Ex. K), 45 (Ex. R). Second, on a similar front, AAFC and SVC assert that there was a general agreement between AAFC and SVC providing that all Staccato testing was done on behalf of AAFC or its inventor. ECF No. 102 at 3.

Monson Fruit, Van Well, and the Goodwins characterize the issue underlying their motion as purely legal—*i.e.*, whether the testing agreements were for the sale of goods or services. However, the issue is only legal where the facts related to the transactions are uncontradicted. Of the disputed facts presented, a reasonable jury could find that AAFC's patent is valid, for example, by finding that all growers had testing agreements executed on behalf of AAFC and that AAFC, pursuant to the contracts, retained ownership to the Staccato plant material. *See Anderson*, 477 U.S. at 250. Construed in the light most favorable to AAFC and SVC, these facts indicate that the growing contracts were for services rather than goods. *See id.* at 255. Both challenged facts are material to whether Staccato was on sale, rather than subject to experimental testing, one year prior to the patent application. And crucially, Monson Fruit, Van Well, and the Goodwins did not produce a single definite example of a commercial sale or offer of Staccato before the critical date. *Group One, Ltd.*, 254 F.3d at 1045. For these reasons, the Court denies Monson Fruit, Van Well, and the Goodwins' Motion for Summary Judgment on Invalidity.

//
//

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . \*11**

### B. Motion to Dismiss Counterclaim Number 3

Next, AAFC and SVC seek dismissal of Monson Fruit, Van Well, and the Goodwins' third counterclaim of unlawful restraint of trade. They raise several issues with Monson Fruit, Van Well, and the Goodwins' allegations. AAFC and SVC contend that Monson Fruit, Van Well, and the Goodwins failed to allege all four elements of an antitrust claim under Section 2 of the Sherman Antitrust Act of 1890 (the "Sherman Act"), 15 U.S.C. § 2, and also failed to meet the heighted pleading standard for fraud under Federal Rule of Civil Procedure 9(b). Specifically, they allege AAFC and SVC failed to plead (1) relevant market; (2) market or monopoly power; (3) anticompetitive or predatory conduct; and (4) injury to competition.

In their response brief, Monson Fruit, Van Well, and the Goodwins cite their factual assertions to argue that they have stated a plausible fraud claim under the theory of *Walker Process Equipment, Inc. v. Food Machinery Chemical Corp.*, 382 U.S. 172 (1965). Monson Fruit, Van Well, and the Goodwins name specific individuals involved in the patent application who they allege intentionally omitted material information when responding to the U.S. PTO Examiner's requests for evidence of commercial sales or offers. They assert that a jury may infer intent from this indirect and circumstantial evidence, including AAFC and SVC's purported motivation to conceal, repeated failures of disclosure, and the high degree of materiality of the omitted information. To illustrate, Monson Fruit, Van Well, and the Goodwins cite a document that indicates, for a separate cherry variety known as Celeste, SVC asked Fowler Nursery to amend a document to indicate a "testing fee instead of tree price" because the Celeste patent was in limbo.

To state a claim under *Walker Process*, Monson Fruit, Van Well, and the Goodwins must demonstrate (1) that the Staccato patent was procured by knowing and willful fraud practiced by AAFC and SVC on the U.S. PTO; and (2) all the

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *12**

elements necessary to establish a violation of § 2 of the Sherman Act are present. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068–71 (Fed. Cir. 1998)); *Walker Process Equipment, Inc. v. Food Machinery Chemical Corp.*, 382 U.S. 172 (1965). The first element of alleged fraudulent procurement of a patent must be plead with particularity, as required by Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* As applied in this context, Rule 9(b) "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp.*, 575 F.3d at 1327.

Second, Monson Fruit, Van Well, and the Goodwins must state a claim under § 2 of the Sherman Act for monopolization or attempted monopolization.[4] With respect to the former, they must plead "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015) (quoting *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010)). "[T]o state a claim for attempted monopolization, the plaintiff must allege facts that, if true, will prove: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Coalition for ICANN*

---

[4] Monson Fruit, Van Well, and the Goodwins assert claims for both monopolization and attempted monopolization. *See, e.g.*, ECF No. 63 at 70, ¶ 66; *id.* at 73, ¶ 83.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *13**

*Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2009) (quoting *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008)).

The Court foremost concludes that Monson Fruit, Van Well, and the Goodwins have stated a fraud claim with sufficient particularity under the theory of *Walker Process*. While perhaps barebone, the Amended Answers state the circumstances constituting the alleged fraud. Monson Fruit, Van Well, and the Goodwins have adequately described the who, what, when, where, and how of the alleged material omission. *See Exergen Corp.*, 575 F.3d at 1327. Therefore, the claims withstand AAFC and SVC's Motion to Dismiss.

To demonstrate, Monson Fruit, Van Well, and the Goodwins claim that on December 22, 2003, the U.S. PTO Examiner requested information on "catalogs," inter alia, that might show whether the claimed plant "was publicly available" prior to the filing date of the application. ECF No. 63 at 59, ¶¶ 36–37. Ms. Couriard, Mr. Haddrell, and Dr. Lane responded to the communication on June 14, 2004, and allegedly knowing of the previous testing agreements and C&O Nursery catalog, omitted the material. Ms. Aguirre and Mr. Culley were also alleged to have knowledge of the widespread "public use, testing, and sales of Staccato within the United States before the critical date"—that is, the testing agreements and distribution of Staccato to select growers—but did not disclose the information after AAFC's involvement in the patent prosecution after March 7, 2008. ECF No. 63 at 61–62, ¶¶ 42–44.

In addition, a jury could infer deceptive intent from these individuals with indirect and circumstantial evidence, such as the alleged desire to execute an exclusive licensing agreement with Stemilt. *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016); *see also Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1366–67 (Fed. Cir. 2007). The repeated failure to disclose information of alleged high materiality, whether through one or several actors, and information regarding AAFC and SVC's conduct or omissions when

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *14**

patenting other varieties, such as Celeste, may also permit a jury to infer intent. *See id.* Regardless, Monson Fruit, Van Well, and the Goodwins are not required to allege specifics of any individual's intent or knowledge to survive a motion to dismiss. *See* Fed. R. Civ. P. 9(b). For these reasons, the Court holds that Monson Fruit, Van Well, and the Goodwins have met the particularity standard under Rule 9(b). The Court next considers whether Monson Fruit, Van Well, and the Goodwins have pleaded all elements of a § 2 claim.

### 1. Market Definition

In their Amended Answers, Monson Fruit, Van Well, and the Goodwins assert the relevant market is sweet cherries maturing at least seven days after the Sweetheart variety in the United States, which spans a "very short, three- to four-week window" during summer. ECF No. 63 at ¶¶ 62, 63, 68. Monson Fruit, Van Well, and the Goodwins allege that "[o]ther than the Glory cherry variety accused of infringement in this case, there are no other known substitute sweet-cherry varieties . . . that are not also owned or controlled by AAFC and SVC/PICO." *Id.* at 70, ¶ 65.

The Court finds that Monson Fruit, Van Well, and the Goodwins pleaded a relevant market. Although the term "submarket" is not utilized by Monson Fruit, Van Well, and the Goodwins in their Amended Answers, the Court finds that Monson Fruit, Van Well, and the Goodwins have pleaded sufficient facts to demonstrate a relevant submarket. At a minimum, they have presented allegations that cherries maturing at least seven days after the Sweetheart variety have "distinct prices" and "peculiar characteristics" to constitute a submarket. *See Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 325 (1962). For example, Monson Fruit, Van Well, and the Goodwins assert that, beyond Staccato's late-maturity date, "Staccato has other horticulturally desirable characteristics, including good size, shape, disease resistance, frost resistance, and taste," ECF No. 63 at 69, ¶ 64, and that there is "no other known substitute sweet-cherry varieties."

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *15**

*Id.* at 70, ¶ 65. AAFC and SVC acknowledge themselves that the late-maturing variety provides a "distinct financial advantage" to growers. ECF No. 1 at 1, ¶ 2. Thus, while the relevant market could be better defined (and may yet raise further issues), it is not so insufficient to be "facially unsustainable" at the pleading stage. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

### 2. Anti-Competitive Conduct and Injury

Monson Fruit, Van Well, and the Goodwins next contend that enforcement of the allegedly fraudulent '551 Patent against them, and others in the market, was to deter them and others from entering the market and that such conduct is predatory and unlawful. ECF No. 63 at 69, ¶ 62; *id.* at 70, at ¶ 66. Monson Fruit, Van Well, and the Goodwins assert that AAFC and SVC knowingly used an invalid patent to "control or attempt to control" the relevant market by limiting the number of acres planted and deterring entry into the market. ECF No. 63 at ¶¶ 66, 68. Harm caused by unlawful assertion of a patent against a party may constitute a valid *Walker Process* claim. *See Hydril Company LP v. Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007); *cf. Nobelpharma* 141 F.3d at 1070. Monson Fruit, Van Well, and the Goodwins are also not required to demonstrate objectively reasonable apprehension from threatened enforcement of the '551 Patent. *See Hydril*, 474 F.3d at 1350.

The Court finds that Monson Fruit, Van Well, and the Goodwins stated sufficient facts alleging anti-competitive conduct. Enforcement of a patent procured by fraud may constitute anticompetitive conduct, as it is a form of economic coercion that antitrust laws were intended to prevent. *See Hydril*, 474 F.3d at 1350. The Court determines that Monson Fruit, Van Well, and the Goodwins are not required to demonstrate more at these early stages of the case and prior to completion of discovery. *See id.* Accordingly, Monson Fruit, Van Well, and the Goodwins have properly alleged anticompetitive conduct.

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *16**

1  Monson Fruit, Van Well, and the Goodwins also request attorneys' fees
2  arising from the patent prosecution. *See* ECF No. 63 at 70, ¶ 66; *id.* at 75. The
3  Federal Circuit has indicated that attorneys' fees may form the basis for antitrust
4  injury and injury-in-fact under a *Walker Process* claim. *See TransWeb, LLC*, 812
5  F.3d at 1310–12 (citations omitted); *see also Rickards v. Canine Eye Registration*
6  *Found.*, 783 F.2d 1329, 1334–35 (9th Cir. 1986); *Quest Integrity USA, LLC v.*
7  *A.Hak Indus. Servs. US, LLC*, No. C14-1971RAJ, 2016 WL 4533067, at *5 (W.D.
8  Wash. Apr. 8, 2016). At the very least, the Court concludes that Monson Fruit, Van
9  Well, and the Goodwins' allegations "raise a reasonable expectation that discovery
10 will reveal evidence of an injury to competition." *Toranto v. Jaffurs*, 297 F. Supp.
11 3d 1073, 1090 (S.D. Cal. 2018) (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d
12 1192, 1198 (9th Cir. 2012)). Thus, for purposes of the Motion to Dismiss, the
13 Court concludes that Monson Fruit, Van Well, and the Goodwins' claims are
14 sufficient to establish both anticompetitive conduct and antitrust injury under the
15 Sherman Act.

### 3. Market or Monopoly Power

17 The Amended Answers state that the relevant market includes Staccato,
18 Glory, and at least one other variety that is also owned or controlled by AAFC and
19 SVC. ECF No. 63 at ¶ 65. Monson Fruit, Van Well, and the Goodwins also allege
20 that, to the extent other late-maturity varieties might have been developed, or could
21 be developed in the future, AAFC and SVC have used the allegedly fraudulent
22 patent to eliminate them from the market. *See id.* at 70, ¶ 66.
23 Finally, the Court finds that Monson Fruit, Van Well, and the Goodwins
24 satisfactorily allege market or monopoly power. AAFC and SVC did not cite, and
25 the Court could not locate, any authority requiring that a party plead an exact
26 percentage of market control to survive a motion to dismiss. Based on the facts as
27 articulated in the Amended Answers, AAFC and SVC have market power over two
28 of the three varieties of sweet cherries in the alleged submarket. *See Rebel Oil Co.*

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *17**

*v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 n.10 (9th Cir. 1995) (declining to adopt a bright-line rule for defining market share). To the extent AAFC and SVC deny the factual allegations of its ownership or market share, such is a question of fact and inappropriate for resolution on a motion to dismiss. *Cargill Inc. v. Budine*, No. CV-F-07-349- LJO-SMS, 2007 U.S. Dist. LEXIS 89643 *16–17 (E.D. Cal. Nov. 27, 2007). It is adequate that Monson Fruit, Van Well, and the Goodwins have pleaded facts that, if true, present a plausible claim on its face. *Twombly*, 550 U.S. at 570. For all the foregoing reasons, the Court finds that Monson Fruit, Van Well, and the Goodwins pleaded a plausible claim under § 2 of the Sherman Act.

## Conclusion

The Court concludes that genuine disputes of material fact preclude summary judgment on patent invalidity, and Monson Fruit, Van Well, and the Goodwins failed to proffer clear and convincing evidence of a definite sale or offer of Staccato one year prior to the patent application. Further, Monson Fruit, Van Well, and the Goodwins stated a plausible claim under the theory of *Walker-Process* fraud, and the alleged fraud was pleaded with sufficient particularity. Both motions are denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Partial Summary Judgment on Validity, ECF No. 78, is **DENIED**.

2. Plaintiff and Third-Party Defendant's Motion to Dismiss Counterclaim Number 3, ECF No. 90, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 3rd day of January 2022.

*/s/ Stanley A. Bastian*

Stanley A. Bastian
Chief United States District Judge

ORDER DENYING PLAINTIFF'S MOTION TO DISMISS . . . *18