FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HER MAJESTY THE QUEEN IN RIGHT OF CANADA AS REPRESENTED BY THE MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority,<br><br>    Plaintiff/Counter-Defendant,<br><br>    v.<br><br>VAN WELL NURSERY, INC., a Washington Corporation; MONSON FRUIT COMPANY, INC., a Washington Corporation; GORDON GOODWIN, an individual; and SALLY GOODWIN, an individual,<br><br>    Defendants/Counter-Plaintiffs,<br><br>    v.<br><br>SUMMERLAND VARIETIES CORPORATION,<br><br>    Third Party Defendant/ Counter-Defendant. | No. 2:20-CV-00181-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS** |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS** *1

Before the Court is Plaintiff's Motion for Summary Judgment on Defendants' Antitrust Counterclaim, ECF No. 222. The motion was considered without oral argument. Plaintiff Her Majesty the Queen in Right of Canada, as Represented by the Minister of Agriculture and Agri Food a Canadian Governmental Authority, and Third-Party Defendant Summerland Varieties Corporation, are represented by Jennifer D. Bennett, Michelle K. Fischer, and Daniel William Short. Defendant Monson Fruit Co., Inc. is represented by Mark P. Walters and Mitchell D. West. Defendant Van Well Nursery, Inc. is represented by Quentin D. Batjer, Kent N. Doll, and Timothy J. Billick; Mr. Batjer and Mr. Billick also represent Defendants Gordon Goodwin and Sally Goodwin.

In this case, the Court finds Plaintiff and SVC/PICO are entitled to summary judgment on Defendants' actual and attempted monopolization counterclaims. Defendants have not proffered evidence to demonstrate that Plaintiff and SVC/PICO are a single entity, and their reliance on aggregating Plaintiff's and SVC/PICO's market shares to demonstrate monopoly power is not permitted. Since Defendants cannot demonstrate monopoly power, the antitrust counterclaims are dismissed.

## FACTS[1]

### A. *The Parties*

Plaintiff the Minister of Agriculture and Agri-Food is a department of the Canadian government that operates a tree fruit breeding program. This breeding program develops sweet cherry varieties, including "Staccato," a late-harvest cherry that is central to this action. Staccato was first labeled as variety "13S-20-09," and later given the commercial name Staccato. Staccato is patented in the

---

[1] The following facts are construed in the light most favorable to Defendants as the non-moving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS \*2**

United States under U.S. Patent No. 20,55 ("the '551 Patent"), and Plaintiff is the owner and assignee of the patent.

On June 16, 1994, Plaintiff and Third-Party Defendant Summerland Varieties Corporation—formerly known as the Okanagan Plant Improvement Corporation ("SVC/PICO")—entered into a license agreement. Under the agreement, SVC/PICO would coordinate "testing" for cherry cultivars developed by Plaintiff's tree fruit breeding program. This included Staccato.

**B.** *Market Share Allegations*

Between 2019 and 2021, fresh cherry varieties shipped in the United States during the [last] four weeks of the season; *i.e.*, on or after August 15th (the "late-season cherry market"), included Bings, Lapins, Skeenas, Sweethearts, and Staccatos. However, Staccato's defining feature is maturation later than these varieties, and other varieties can only access the late harvest cherry market if planted in very limited ground at high elevation and high altitude.

Dr. Matthew Whiting, an expert for Defendants, opined that the majority of the late-harvest cherries shipped in the United States after August 14th are Staccato. He provided his opinion on the amount of the late-season cherry market owned or controlled by Plaintiff and SVC/PICO through the '551 Patent, and he concluded that Plaintiff and SVC/PICO collectively own or control 81% of the late-season cherry market in the United States. In doing so, Dr. Whiting used data on imported fruit from Canada, among other things. When pressed on the distinction between Plaintiff and SVC/PICO's "ownership" versus "control" over the market, Dr. Whiting clarified at his deposition that his intention was to relay that the "industry in British Columbia benefited" from the "distribution strategies imposed by SVC and Ag Canada."

Dr. Jason Winfree, an economist, was also retained by Defendants to "determine whether evidence exists of monopolization or attempted monopolization" by Plaintiff and SVC/PICO in the market. Dr. Winfree concluded,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS *3**

in terms of consumer impact in the retail cherry market: "[t]he data shows that prices are higher at the end of the season. . . . This monopoly or oligopoly power implies that prices are above the cost of producing cherries." He also stated that "the growers of Staccato, all or most of whom are licensed by SVC/PICO and the Canadian government, control a significant portion of the U.S. market for fresh sweet cherries late in the season and represent the last cherries of the season shipped to retail locations in the U.S." *Id.* at 2. Dr. Winfree identified the "supply restrictions" imposed by Plaintiff and its commercialization agent SVC/PICO as the cause of the market power found in his model during the late season. *Id.* at 25–26.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 250. The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS \*4**

motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## DISCUSSION

Section 2 of the Sherman Antitrust Act of 1980 provides that "[e]very person who shall monopolize, or attempt to monopolize, . . . shall be deemed guilty of a misdemeanor[.]" 15 U.S.C. § 2. Section 4 of the Clayton Act creates a private cause of action under the statute for "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws[.]" *Id.* § 15. Defendants in this case plead claims for both (1) actual monopolization, and (2) attempted monopolization, in violation of § 2.

To establish a claim for actual monopolization under § 2, among other things, a party must show the opposing party possessed monopoly power in the relevant market. *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Pro. Publications, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). For attempted monopolization, a party must show "dangerous probability" of achieving that monopoly power. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432–33 (9th Cir. 1995). Monopoly power is when "one firm alone [has] the power to control market output and exclude competition." *Id.*

Plaintiff and SVC/PICO argue they are entitled to summary judgment on Defendants' antitrust counterclaims because Defendants cannot demonstrate they possessed or were dangerously close to possessing monopoly power. Plaintiff and SVC/PICO assert Defendants' evidence relies on their market shares being aggregated with one another and/or with all Canadian growers of Staccato, and this is impermissible. Defendants respond that aggregation of shares should be permitted, as Plaintiff and SVC/PICO experience such "economic unity" that they are a single entity for antitrust purposes. ECF No. 249 at 21.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS \*5**

Market participants' shares may be aggregated and treated as a single economic entity in the context of § 1 claims. *See, e.g.*, *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147–48 (9th Cir. 2003) ("Where there is substantial common ownership, . . . individual firms function as an economic unit and are generally treated as a single entity[.]"). Specifically, the coordinated activity of a parent and its wholly owned subsidiary may be viewed as a single enterprise's action for purposes of § 1. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1982). Lower courts have also applied the reasoning to a "broader variety of economic relationships." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005).

In contrast, entities do not function as a single "economic unit" in providing services when they have no substantial common ownership, are mutually beneficial corporations but independently owned by their respect members, and "[t]heir profits thus don't all wind up under the same corporate mattress." *Freeman*, 322 F.3d at 1149. The "single-entity inquiry is fact-specific," and "in the absence of economic unity, the fact that joint venturers pursue the common interests of the whole is generally not enough, by itself, to render them a single entity." *Id.* at 1148.

The U.S. Supreme Court has stated that "[c]oncerted activity subject to § 1 is judged more sternly than *unilateral* activity under § 2." *Copperweld*, 467 U.S. at 768 (emphasis). And, as Defendants point out, *Copperweld* and its progeny have only addressed § 1 claims.

In *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017), however, the Tenth Circuit found that the rationale of *Copperweld* applied equally to § 2 claims. It held that "related entities' coordinated conduct must be treated as the unitary conduct of the single enterprise that together they form, and it is that aggregated conduct that must be scrutinized under § 2." *Id.* at 1236. While the Ninth Circuit in *Arandell Corp. v. Centerpoint Energy Servs., Inc.*,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT RE: ANTITRUST CLAIMS *6

900 F.3d 623 (9th Cir. 2018), cited *Lenox*'s distinction of § 1 and § 2 claims in a footnote, it did not explicitly adopt *Lenox*'s rationale. *Arandell Corp.*, 900 F.3d at 631 n.8.

In this case, Defendants' theory that Plaintiff and SVC/PICO are a single entity for antitrust purposes is untenable and not supported by the evidence. Assuming for the sake of argument that *Copperweld* can be applied to § 2 claims, Defendants have not proffered evidence that Plaintiff and SVC/PICO are a single entity.

Defendants' experts base their opinions on an assumption that Plaintiff, SVC/PICO, and the Canadian industry's respective market shares may be aggregated. However, Defendants do not argue that Plaintiff and SVC's profits end up under the same "corporate mattress," or that they have substantially common ownership. *See Freeman*, 322 F.3d at 1149. Defendants have not alleged they share an owner-subsidiary relationship. *See Copperweld*, 467 U.S. at 771. While Plaintiff and SVC/PICO appear to be mutually beneficial entities that pursue common interests, this is not enough, on its own, to render them a single entity. *Freeman*, 322 F.3d at 1148. Defendants cannot demonstrate monopoly power through aggregating Plaintiff and SVC/PICO's market shares, much more the entire Canadian industry. Defendants cannot demonstrate an essential element of their § 2 claims—therefore, Plaintiff is entitled to summary judgment.

The parties also submitted a number of proposed sealed documents that they assert contain confidential trade secrets. In resolving this motion, the Court did not need to consider the substance of these documents, as they are not material to the above issue of law. Accordingly, the Court denies the Motions to Seal as moot and strikes the proposed sealed documents from the record. The Court also denies the Motions to Strike the Declaration of Robert Blakey and Richard Fox. While the declarations are also not material to the Court's legal conclusion, the Court finds any failure to disclose the witnesses was harmless.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS** *7

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment on Defendants' Antitrust Counterclaim, ECF No. 222, is **GRANTED**.

2. Defendants' First and Second Counterclaims for Attempted and Actual Monopolization are hereby **DISMISSED with prejudice**.

3. Plaintiff's Motions to Seal, ECF No. 239, 256, and 280, are **DENIED as moot**.

4. The Proposed Sealed Documents, ECF Nos. 246, 258, and 282, in their entirety, and ECF No. 220-3, 220-5, and 220-6, are **STRICKEN** from the Court record.

5. Defendants' Motion to Strike Declaration of Robert Blakey, ECF No. 272, and Plaintiff's Motion to Strike Surreply and Declaration of Richard Fox, ECF No. 277, are **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 30th day of December 2022.

Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: ANTITRUST CLAIMS *8**