FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HER MAJESTY THE QUEEN IN RIGHT OF CANADA AS REPRESENTED BY THE MINISTER OF AGRICULTURE AND AGRI-FOOD, a Canadian governmental authority, | No. 2:20-CV-00181-SAB |
| Plaintiff/Counter-Defendant, | **ORDER GRANTING** |
| v. | **DEFENDANTS' MOTION FOR** |
| VAN WELL NURSERY, INC., a Washington Corporation; MONSON FRUIT COMPANY, INC., a Washington Corporation; GORDON GOODWIN, an individual; and SALLY GOODWIN, an individual, | **SUMMARY JUDGMENT RE:** **PATENT INVALIDITY** |
| Defendants/Counter-Plaintiffs, | |
| v. | |
| SUMMERLAND VARIETIES CORPORATION, | |
| Third Party Defendant/ Counter-Defendant. | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY** *1

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 229. The motion was considered without oral argument. Plaintiff Her Majesty the Queen in Right of Canada, as Represented by the Minister of Agriculture and Agri Food a Canadian Governmental Authority, and Third-Party Defendant Summerland Varieties Corporation, are represented by Jennifer D. Bennett, Michelle K. Fischer, and Daniel William Short. Defendant Monson Fruit Co., Inc. is represented by Mark P. Walters and Mitchell D. West. Defendant Van Well Nursery, Inc. is represented by Quentin D. Batjer, Kent N. Doll, and Timothy J. Billick; Mr. Batjer and Mr. Billick also represent Defendants Gordon Goodwin and Sally Goodwin.

The Court finds Defendants are entitled to summary judgment on Plaintiff's plant patent infringement claim. The '551 Patent was commercially sold in 2000 before the critical date. Plaintiff's experimental use defense fails because Staccato was reduced to practice before the sale. Accordingly, the '551 Patent is invalid and unenforceable against Defendants.

## FACTS[1]

### A. *Discovery of Staccato*

Plaintiff the Minister of Agriculture and Agri-Food is a department of the Canadian government that operates a tree fruit breeding program. This breeding program develops sweet cherry varieties, including "Staccato," a late-harvest cherry that is central to this action. Staccato was first labeled as variety "13S-20-09," and later given the commercial name Staccato. Staccato is patented in the United States under U.S. Patent No. 20,55 ("the '551 Patent"), and Plaintiff is the owner and assignee of the patent.

---

[1] The following material facts are construed in the light most favorable to Plaintiff as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY \*2**

Staccato was discovered in 1982 by inventor Dr. David Lane. Staccato trees were first budded and planted in Canada between 1990–1992, yielding the first generation of sufficient fruit for evaluation between 1995 and 1999. For each season after 1992, Staccato was asexually reproduced, and its distinguishing traits conserved over each successive generation in Canada. The '551 Patent states that Staccato's asexual propagation took place in Summerland, British Columbia, Canada, and the under these growing conditions, the variety consistently had characteristics that distinguished it from other cherry varieties.

### B. *Testing Program and Commercial Sale*

On June 16, 1994, Plaintiff and Third-Party Defendant Summerland Varieties Corporation—formerly known as the Okanagan Plant Improvement Corporation ("SVC/PICO")—entered into a license agreement. Under the agreement, SVC/PICO would coordinate "testing" for cherry cultivars developed by Plaintiff's tree fruit breeding program. This included Staccato.

Beginning in 1995, and pursuant to the license agreement, SVC/PICO executed testing or growing agreements with U.S. farmers. Per those agreements, U.S. farmers would pay royalties to plant Staccato trees for evaluation. Dr. Frank Kappel, the breeder for Plaintiff since 1994, visited Staccato test orchards in the United States, spoke with test growers, and communicated test growers' comments to SVC/PICO. Staccato's inventor, Dr. Lane, was not involved in the testing program or evaluation of the U.S. plantings.

One test grower of Staccato was Kyle Mathison. In 1995, Mr. Mathison entered into a testing agreement with SVC/PICO and grew Staccato on behalf of Stemilt Growers, Inc. ("Stemilt"), in Wenatchee, Washington. While it is unclear when the Staccato trees were first planted, Mr. Mathison had fruiting trees on approximately 3.3 acres of land by 2000. In 1999, Mr. Mathison approached SVC/PICO seeking exclusive U.S. marketing rights of Staccato fruit for Stemilt; Stemilt was ultimately awarded these rights.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *3**

The parties do not dispute that Stemilt was in possession of Staccato, pursuant to Mr. Mathison's testing agreement, in 2000. In addition, Stemilt's business records indicate the company received and packed 22,394 pounds, or 11.2 tons, of "STOCATA" in 2000. Mr. Mathison testified that "STOCATA" was a misspelling of Staccato that reflected the way farmers pronounced the variety. Plaintiff states that Staccato would have been packed for the first time by Stemilt in 2000 to see how it would hold up on the packing line. However, the business records also demonstrate that in 2000, Stemilt sold 18,200 pounds of Staccato for $37,683, at $2.0705 per pound.

### C. Patent Application

SVC/PICO, working with the inventor Dr. Lane, submitted a provisional patent application for Staccato on March 13, 2002. On March 6, 2003, a non-provisional patent application was filed, which claimed the early filing date to the provisional patent application. The '551 Patent for Staccato was issued on December 15, 2009.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 250. The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled

to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## DISCUSSION

Plaintiff brings causes of action for: (1) plant patent infringement, in violation of 35 U.S.C. § 271; (2) correction of inventorship under 35 U.S.C. § 256 for the Glory patent; (3) declaratory judgment against the Goodwin Defendants pursuant to 28 U.S.C. § 201; (4) unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(A)(1)(A); (5) false advertising under the Lanham Act, *id.* § 1125(A)(1)(B); (6) conversion; (7) tortious interference with economic relations; and (8) unfair competition, RCW § 19.86.020.

### A. *First Cause of Action: Plant Patent Infringement*

Defendants move for summary judgment on Plaintiff's patent infringement claim. They argue the '551 Patent is invalid because it was on sale prior to the "critical date," which is one year prior to the effective filing date of the patent application. The Court agrees with Defendants and grants summary judgment in their favor.

The Patent Act, 35 U.S.C. § 1 *et seq.*, provides general requirements for patentability of an invention. Section 102 states that an inventor shall be entitled to a patent unless

> the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention[.]

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *5**

*Id.* § 102(a)(1). This section "serves as a limiting provision" that prohibits, among other things, the patenting of an invention where a commercial sale was made one year or less before the effective filing date of the claimed invention. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 64 (1998); 35 U.S.C. § 102(b). The limitation is known as the "on-sale bar."

The on-sale bar of § 102(b) "establishes a one year grace period based on publication or public use or sale, after which an inventor is barred from access to the patent system." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). The U.S. Supreme Court has directed that the on-sale bar applies when two conditions are satisfied before the critical date: (1) the invention is the subject of a commercial offer for sale, and (2) the invention is ready for patenting, that is, "reduced to practice." *Pfaff*, 525 U.S. at 67. A commercial sale of an invention by a third-party is sufficient to invalidate a patent. *Abbott Labs v. Geneva Pharms, Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999).

For plant inventions specifically, "[w]hoever invents or discovers and asexually reproduces any distinct and new variety of plant, . . . may obtain a patent therefor." 35 U.S.C. § 161. "An actual reduction to practice is completed when the new variety is actually reproduced by any satisfactory method of asexual propagation and it is determined that the progeny in fact possess the characteristic or characteristics which distinguish it as a new variety." *Dunn v. Ragin*, 50 U.S.P.Q. 472 (1941); *Imazio Nursery, Inc. v. Greenhouses*, 69 F.3d 1560, 1566 (Fed. Cir. 1995) (holding that "asexual reproduction confirms the existence of a new variety by separating variations resulting from fluctuations in environmental conditions from true plant variations").

Patents are presumed valid, and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). The challenging party must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *6**

1. *Whether Staccato was subject to a commercial sale.*

To determine whether the on-sale bar applies, the Court must first determine whether Staccato was offered for sale or sold. The Federal Circuit has "made clear" that "'[t]he transaction at issue must be a 'sale' in a commercial law sense,' and that '[a] sale is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.'" *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1373 (Fed. Cir. 2016) (citation omitted). The title transfer of an invention is a significant factor. *See id.* at 1376.

In this case, in 2000 Stemilt's business records unambiguously depict a sale of 18,200 pounds of Staccato for $2.0705 per pound, totaling $37,683. These shipments of Staccato to a third-party, in return for monetary consideration, is clear and convincing evidence of a contract for commercial sale. *See Microsoft Corp.*, 564 U.S. at 95. The sale occurred prior to the critical date, which is one year prior to the effective filing date of the patent application. *Pfaff*, 525 U.S. at 64. The Court need not determine the exact date that governs, because Stemilt's sales in 2000 were before either of the parties' purported critical dates of May 13, 2001, and March 6, 2002.

Plaintiff claims that Defendants' factual assertions regarding the sale are disputed. The Court finds Plaintiff's disputes are not genuine. Plaintiff has not provided evidence to place the sale of Staccato in dispute and its claims are not supported by the record. Plaintiff offers three core disagreements it asserts preclude summary judgment: (1) "STOCATA" is not the commercial name of Staccato, (2) the Stemilt business records do not specifically depict sales, and (3) Stemilt's 3.3 acres of Staccato could not have produced sufficient fruit for the sales.

Plaintiff's first contention is immaterial, because Plaintiff does not dispute that the "STOCATA" was actually Staccato. Plaintiff does not argue that Stemilt

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *7**

was not in possession of Staccato at the time, and Mr. Mathison confirmed at his deposition that "STOCATA" was a misspelling of "Staccato." Plaintiff did not submit evidence to the contrary. Thus, this is not a genuine dispute of material fact

In addition, Plaintiff contends Stemilt's business records only show that Staccato was received and packed, not shipped and sold to customers. This characterization of the evidence is untenable. The record clearly shows that there were "SALES" of Staccato for $2.0705 per pound, providing a grand total of $37,683 for 18,200 pounds sold. There is no dispute that Stemilt received this money for these boxes of fruit, and there is no dispute that Stemilt labeled these transactions as "SALES." The evidence shows commercial sales of Staccato.

Third, Plaintiff relies on a declaration from Ken Haddrell, the former Operations Manager for SVC/PICO between 1995 and 2013. Mr. Haddrell asserts that during a June 7, 2000 visit to Stemilt's Staccato test orchards, he observed "only 3.3 acres of test trees were fruiting" and "those trees may have a small amount of fruit because they may have had frost as they were located in a low spot." ECF No. 243 at 7–8, ¶ 10. Mr. Haddrell opines that he would have "expected that [Stemilt's] 3.3 acres of trees would produce significantly less than 22,394 pounds of fruit." *Id.* at 7–8, ¶¶ 10–11. He claims that including frost damage, only 500 pounds of fruit per acre could be harvested or approximately 1,650 pounds from those 3.3 acres. *Id.* at 7, ¶ 11.

Mr. Haddrell's opinion is inadmissible. Mr. Haddrell was not disclosed as an expert, and Plaintiff did not attempt to qualify him as an expert. Fed. R. Civ. P. 26(a)–(e) (requiring disclosure of experts); *see Quevedo v. Trans–Pacific Shipping, Inc.*, 143 F.3d 1255 (9th Cir. 1998) (affirming exclusion of expert testimony when the expert was disclosed twenty days late, and the expert reports were six weeks late). Mr. Haddrell also did not lay a proper foundation for these opinions. *See* Fed. R. Evid. 702 (stating the opinion must be the product of the reason application of professionally reliable principles and methods).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY** *8

In any case, Mr. Haddrell's opinion does not actually conflict, at least in a material way, with Mr. Mathison's testimony and the Stemilt records. He does not say with certainty that Stemilt's test orchard had frost damage in 2000, or even that the trees necessarily bore a small amount of fruit that season. His factual assertions rely on speculation, and his opinions are not based in any purported expertise. This is insufficient to create a genuine dispute of fact.

In a last-ditch attempt to survive summary judgment, Plaintiff incredulously argues that Mr. Mathison's testimony should be dismissed because his testimony is uncorroborated and Mr. Mathison is an "interested" party. Plaintiff cites language from *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002), a case where the Federal Circuit declined to consider evidence from former employees of the defendant.

Mr. Mathison's deposition testimony is not uncorroborated. It is corroborated by Stemilt's business records. Plaintiff also has not supported its claim that Mr. Mathison is an interested party. The record indicates the contrary is more likely. Mr. Mathison has little to gain from this Court finding the Staccato patent invalid, as Stemilt owns exclusive marketing rights for Staccato in the United States, and arguably, Stemilt would stand to gain if Plaintiff is able to enforce the '551 Patent against Stemilt's competitors. In any case, Mr. Mathison and Stemilt are not directly involved in this litigation, and they have no cognizable interest in the litigation in the way Plaintiff purports.

Overall, Plaintiff's arguments do not create genuine disputes of material fact, and no rational juror could find in Plaintiff's favor based on any "counter" evidence presented. Defendants have proffered clear and convincing evidence that Staccato was sold commercially in 2000. The next question is whether Staccato was "reduced to practice," that is, ready for patenting.

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *9**

2. *Whether Staccato was ready for patenting.*

As noted, for a patent to be invalid pursuant to the on-sale bar, the invention must have been ready for patenting. *Pfaff*, 525 U.S. at 67. This condition may be satisfied by proof of reduction to practice before the critical date. *Id.* "Experimental use" is a judicially-created exception to the on-sale bar—it distinguishes experimentation from when "products [are] sold commercially." *See Pfaff*, 525 U.S. at 64. Under the experimental use exception, an inventor looking to perfect their discovery "may conduct extensive testing without losing his right to obtain a patent for his invention—even if such testing occurs in the public eye." *Id.* However, there is a bright red line: market testing and commercial testing do not quality as "experimental uses." *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353–55 (Fed. Cir. 2002). And crucially, "once the invention is reduced to practice, there can be no experimental use negation." *Id.* at 1354 (citing *Zacharin v. United States*, 213 F.3d 1366, 1369 (Fed. Cir. 2000)).

Staccato was reduced to practice through asexual reproduction in Canada before 2000. The inventor, Dr. Lane, discovered Staccato in 1982. The '551 Patent states that, under the direction of Dr. Lane, four trees were created by T-budding vegetative buds of the variety onto Mazzard rootstock. ECF No. 1-1 (U.S. Patent No. 20,551) at 3. The resulting trees were grown in a nursery, dug up in the fall of 1991, and planted in a field in 1992. *Id.* The trees were stable in their horticultural traits and no off-types or variants occurred during the re-propagation of the plants. *Id.* The trees were also hand-pollinated with pollen from other blossoms of Staccato to ensure their fertility. *Id*

Subsequent propagations of Staccato produced trees that were "stable, true-to-type and identical to the original tree in all the horticultural traits." *Id.* For each season after 1992, Staccato was asexually reproduced, and its distinguishing traits conserved over each successive generation in Canada. The '551 Patent plainly states that Staccato's "asexual propagation" took place in Summerland, British

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY** *10

Columbia, Canada. *Id.* "Under growing conditions . . . at Summerland in the Okanagan Valley of British Columbia, Canada," the variety "consistently" had characteristics that distinguished it from other cherry varieties. *Id.*

Yet, Plaintiff contends its testing program was conducted "in various countries and geographical locations" to determine whether it "in fact" possessed characteristics that distinguished it as a new variety and could be asexually reproduced. Plaintiff asserts the trees planted in the United States only yielded fruit sufficient for evaluation between 2001 and 2002, and thus, Staccato was not "reduced to practice" at the time of the Stemilt sale. Essentially, Plaintiff argues the inventor must have found these conditions present from plantings in *the United States* before Staccato could be patentable.

Whether the conditions of patentability were observed in orchards growing in the United States specifically is not relevant to the Court's inquiry. Plaintiff has not cited to, and the Court has been unable to find, caselaw that hinges on how successful a plant is in different growing geographies. Plaintiff's assertion that Staccato not reduced to practice until it was tested and grown in the United States conflicts with the face of the '551 Patent, and it is not supported by the record evidence. Plaintiff's testing in the United States for geographic market viability does not affect the fact that Staccato (1) was known to possess characteristics that distinguished it as a new, late-harvest variety, and (2) was reproduced through asexual propagation in Canada for each season after 1992. Accepting that Staccato was not ready for patenting until the fruit were sufficiently evaluated from those Canadian plantings between 1995 to 1999, these facts still demonstrate Staccato was reduced to practice prior to 2000.[2]

---

[2] Plaintiff also has not provided evidence that the testing program was to determine that Staccato was a distinct and new variety of plant that could be asexually reproduced. Plaintiff admits Dr. Kappel oversaw the U.S. testing

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY *11**

Staccato was reduced to practice before Stemilt's commercial sale of the fruit in 2000. Therefore, "there can be no experimental use negation." *Allen Eng'ring Corp.*, 299 F.3d at 1354 (citing *Zacharin*, 213 F.3d at 1369). The Court finds Stemilt's sales of Staccato do not, and did not, constitute permissible experimental use. The '551 Patent is invalid. Because the patent is invalid, it cannot be infringed. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015). Defendants are entitled to summary judgment on Plaintiff's claim for plant patent infringement.

## B. *Remaining Cause of Actions: Lanham Act, Correction of Inventorship, and State-Law Claims*

Defendants move for summary judgment on Plaintiff's remaining claims, to wit: (2) correction of inventorship under 35 U.S.C. § 256 for the Glory patent; (3) declaratory judgment against the Goodwin Defendants pursuant to 28 U.S.C. § 201; (4) unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(A)(1)(A); (5) false advertising under the Lanham Act, *id.* § 1125(A)(1)(B); (6) conversion; (7) tortious interference with economic relations; and (8) unfair competition, RCW § 19.86.020.

The Court finds that genuine disputes of material facts preclude summary judgment on Plaintiff's remaining claims. The parties genuinely dispute whether

---

program and eventual release of Staccato, not Staccato's inventor Dr. Lane. Dr. Lane directed the first asexual reproduction of Staccato in 1990–91, and the parties agree he is only inventor of the plant. Plaintiff has presented no evidence that Mr. Lane was ever involved with the U.S. testing program or that he sought experimental testing to ascertain whether Staccato was a new variety that could be asexually propagated. It appears the U.S. testing was not to determine whether Staccato was indeed a new variety, but whether it would grow well, and perform well, in the country's specific geography and market.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY** *12

Staccato is the same fruit variety as Glory, the origin of Glory, whether Defendants had title to the specific trees and/or fruit in question, whether there has been consumer confusion regarding Staccato and Glory, and the physical qualities of Glory trees and fruit. The Court's declaration of the '551 Patent validity may affect these claims, but that issue has not been briefed and is not before the Court. Therefore, the Court denies summary judgment with respect to Plaintiff's remaining claims.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, ECF No. 229, is **GRANTED**.

2. Plaintiff's First Cause of Action for Plant Patent Infringement is **DISMISSED with prejudice**.

3. U.S. Patent No. 20,551 is declared **INVALID** pursuant to the on-sale bar, 35 U.S.C. § 102(b).

4. The parties are **DIRECTED** to file a Joint Status Report, no later than **twenty-one (21) days** from the date of this Order, addressing the status of the case and expectations regarding the amended scheduling order.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

DATED this 30th day of December 2022.

*Stanley A. Bastian*
Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: PATENT INVALIDITY** *13